**Jimmie D. BRYSON, Appellant,**

v.

**UNITED STATES of America, Appellee.**

**Nos. 21427, 21437, 21439.**

United States Court of Appeals District of Columbia Circuit.

Argued May 21, 1968.

Decided June 27, 1969.

Burger, Circuit Judge, dissented in part.

Mr. Kenneth E. Payne, Washington, D. C. (appointed by this court) for appellant in No. 21,427.

Mr. Jaquelin A. Marshall, Washington, D. C. (appointed by this court) for appellant in No. 21,437.

Mr. Howard Monderer, Washington, D. C. (appointed by this court) for appellant in No. 21,439.

Mr. Joel M. Finkelstein, Asst. U. S. Atty., for appellee in No. 21,427, also entered an appearance for appellee in No. 21,437.

Mr. Leonard H. Dickstein, Atty., Department of Justice, of the bar of the Court of Appeals of New York, pro hac vice, by special leave of court, with whom Mr. Arthur L. Burnett, Asst. U. S. Atty., and Miss Beatrice Rosenberg, Atty., Department of Justice, were on the brief, for appellee in No. 21,437.

Mr. Robert S. Bennett, Asst. U. S. Atty., with whom Miss Carol Garfiel, Asst. U. S. Atty., at the time the brief was filed, was on the brief, for appellee in No. 21,439.

Messrs. David G. Bress, U. S. Atty., at the time the briefs were filed, and Frank Q. Nebeker, Asst. U. S. Atty., at the time the briefs were filed, were on the briefs for appellee in Nos. 21,427, 21,437 and 21,439.

Before BAZELON, Chief Judge, and BURGER and ROBINSON, Circuit Judges.

PER CURIAM:*

The appellant in these cases seeks reversal of three different but interrelated convictions. He was apparently the companion in crime of one Eugene Frazier whose appeal from a robbery conviction was recently before us in Frazier v. United States.[1] In No. 21,427, appellant attacks his conviction as codefendant with Frazier in the trial for the Frazier robbery. In No. 21,437, he seeks reversal of a conviction for a different robbery, of which Frazier was acquitted. No. 21,439 involves a conviction for carrying the dangerous weapon found on appellant at the time of his arrest for the latter robbery.

In both robbery trials, Frazier's confession was improperly introduced into evidence against appellant.[2] The Government confesses error as to these convictions and requests a remand for new trials. We delayed the remands for two reasons. Initially, since all three cases also raise issues concerning the admissibility of identification evidence under Stovall v. Denno,[3] we held them for the court's en banc consideration of the implications of Stovall in Clemons v. United States.[4] In addition, in all three cases appellant challenges the admissibility of evidence claimed to be tainted fruit of Frazier's confession, which was allegedly obtained in violation of Miranda v. Arizona.[5] Since it thus appeared that the admissibility of evidence against appellant might turn on whether Frazier's confession was a "poisonous tree," we originally decided to await the results of the remand on the Miranda issue we ordered in Frazier. However, a recent Supreme Court decision clearly establishes that notwithstanding any past indications to the contrary, appellant has no standing to complain of any violation of

---

* These opinions were prepared prior to June 20, 1969 and are issued pursuant to the judgment of this Court entered on June 21, 1969.

1. 136 U.S.App.D.C. ——, 419 F.2d 1161 (March 14, 1969).

2. Kramer v. United States, 115 U.S.App. D.C. 50, 317 F.2d 114 (1963) ; Jones v.

United States, 119 U.S.App.D.C. 284, 342 F.2d 863 (1964).

3. 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967).

4. 133 U.S.App.D.C. 27, 408 F.2d 1230 (decided December 6, 1968) (en banc).

5. 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed. 2d 694 (1966).

Frazier's Fifth Amendment rights.[6] Accordingly, these cases are now ripe for decision.

## I. No. 21,427

■ As the Government concedes, this conviction must be reversed because of the erroneous admission into evidence against appellant of his codefendant's confession. The Government has also suggested that since the circumstances surrounding out-of-court eyewitness identifications of appellant are unclear from the record, appellant should be permitted at any new trial to challenge these witnesses' in-court identifications, even though the court below originally rejected such a challenge. We accept that suggestion. However, in Frazier v. United States, supra, we upheld the admission of in-court identifications of appellant's codefendant Frazier made by the same witnesses, and this holding permits us to narrow the field of inquiry left open in the case at bar.

■ Since the witnesses, Reznick and Simpson, identified appellant before trial at the same single-suspect cellblock confrontation we found offensive to due process in Frazier, the question is whether their in-court identifications had an independent source.[7] On this question, Frazier indicates that Reznick and Simpson had a good opportunity to observe their assailants at the time of the offense.[8] They gave a reasonably accurate description of both robbers shortly thereafter. In these circumstances, we held that Reznick's photographic identification of Frazier, made in the absence of prejudicial suggestivity long before the improper cellblock confrontation, established an independent source for his in-court identification.[9] The record was confused as to whether Simpson also made a prior photographic identification of Frazier. Resolving the doubt in favor of Frazier, we rested our independent source finding for Simpson's identification on another ground, which is not available to support his identification of appellant Bryson.[10] Thus, under Frazier, the crucial question at any new trial will be whether Reznick and Simpson made reliable photographic identifications of appellant prior to the improper cell-block confrontations. The record leaves some doubt as to whether Bryson was ever identified from photographs.

■ Appellant also argues that the eyewitness identifications were obtained solely by exploitation of information learned from Frazier's confession. If Frazier's confession was obtained in violation of Miranda, he says the identifications were therefore tainted fruits. However, even if they are fruits of a poisonous tree, appellant is not entitled to have them excluded from evidence against him.

In Long v. United States,[11] we held that a defendant had no standing to challenge fruits of a violation of another party's Fifth Amendment rights. This conclusion was in accord with the long-standing rule that a testimonial privilege may be claimed only by the holder of the privilege.[12] The same rule has also been applied to Fourth Amendment violations.[13]

Some recent Supreme Court opinions had appeared to portend a retreat from

6. Alderman v. United States, 394 U.S. 165, 89 S.Ct. 961, 22 L.Ed.2d 176 (1969).

7. Frazier v. United States, supra note 1, p. 1170; Clemons v. United States, supra note 4, 408 F.2d, at p. 1237.

8. Frazier v. United States, supra note 1, p. 1170.

9. Id.

10. Id. p. ——. In a face-to-face confrontation shortly after his arrest, Frazier unequivocally identified Simpson as the man he had robbed.

11. 124 U.S.App.D.C. 14, 18, 360 F.2d 829, 833 (1966).

12. 8 Wigmore, Evidence §§ 2196, 2270 (Rev'd ed. 1961); Bowman v. United States, 350 F.2d 913, 915–916 (9 Cir. 1965), cert. denied, 383 U.S. 950, 86 S.Ct. 1209, 16 L.Ed.2d 212 (1966); Sachs v. Government of the Canal Zone, 176 F.2d 292, 296 (5 Cir.), cert. denied, 338 U.S. 858, 70 S.Ct. 100, 94 L.Ed. 525 (1949).

13. Wong Sun v. United States, 371 U.S. 471, 491–492, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963).

this rule, at least in Fourth Amendment cases and by extension in other constitutional cases as well.[14] But these portents were nipped in the bud by Alderman v. United States.[15] There, the Court held that only those whose own property or privacy has been invaded may obtain exclusion of the fruits of illegal wiretapping.[16] It said:

> We adhere * * * to the general rule that Fourth Amendment rights are *personal rights* which, like some other constitutional rights, may not be vicariously asserted. * * *

> What petitioners appear to assert is an independent constitutional right of their own to exclude relevant and probative evidence because it was seized from another in violation of the Fourth Amendment. But we think there is a substantial difference for constitutional purposes between preventing the incrimination of a defendant through the very evidence illegally seized from him and suppressing evidence on the motion of a party who cannot claim this predicate for exclusion.[17]

■ Fifth Amendment rights are, *a fortiori*, personal rights, as the opinion of Mr. Justice Fortas in *Alderman* makes

clear.[18] His dissent on the standing question would allow a broader vicarious assertion of Fourth Amendment rights because the Fourth Amendment exclusionary rule serves primarily to enforce the blanket prohibition against unreasonable searches and seizures for the benefit of the general public.[19] But he concedes that "only the person whose right has been violated can claim the protection of [the] * * * privilege [against self-incrimination]."[20] Indeed, the only jurisdiction which has broadly approved vicarious standing in Fourth Amendment cases denies such standing to complain of Fifth Amendment violations.[21]

Accordingly, in the light of *Alderman,* even if Frazier's confession was illegally obtained, its fruits would not thereby be rendered inadmissible against appellant.

## II. *No. 21,437*

This robbery conviction rests on Frazier's pre-trial confession implicating appellant and on an in-court identification by the victim. Since the Government confesses error in the admission of the confession, the only question is whether the identification would be admissible at a new trial.[22]

---

14. Simmons v. United States, 390 U.S. 377, 390, 88 S.Ct. 967, 19 L.Ed.2d 1247 n. 12 (1968); Berger v. New York, 388 U.S. 41, 55, 87 S.Ct. 1873, 18 L.Ed.2d 1040 (1967); Hoffa v. United States, 387 U.S. 231, 233, 87 S.Ct. 1583, 18 L.Ed.2d 738 (1967). *See also* Ellis and Watkins v. United States, 135 U.S.App.D.C. 35, 416 F.2d 791 (decided April 30, 1969), p. 798, n. 11.

15. *Supra* note 6.

16. Under *Alderman* a person has standing to object to evidence illegally obtained by wiretapping only if he was himself overheard or if the overheard conversation took place on his property. 89 S.Ct. 961.

17. *Id.,* 89 S.Ct. at 966–967.

18. *Id.,* 89 S.Ct. 961.

19. The Fourth Amendment, unlike the Fifth, is couched in terms of a guarantee that the Government will not engage in unreasonable searches and seizures. It is a general prohibition, a fundamental part

of the constitutional compact, the observance of which is essential to the welfare of all persons. Accordingly, commentators have urged that the necessary implication of the Fourth Amendment is that any defendant against whom illegally acquired evidence is offered, whether or not it was obtained in violation of his right to privacy, may have the evidence excluded.
*Id.,* 89 S.Ct., at 981 (opinion of Fortas, J., dissenting in part).

20. *Id.* at 983.

21. *See* People v. Varnum, 66 Cal.2d 808, 59 Cal.Rptr. 108, 427 P.2d 772 (1967). Cf. People v. Martin, 45 Cal.2d 755, 290 P.2d 855 (1955).

22. Our holding that appellant cannot object to the fruits of a violation of Frazier's Fifth Amendment rights disposes of the contention that the identification is an inadmissible fruit of Frazier's confession.

■ Before trial, the witness, Mrs. Fine, identified appellant at a single-suspect cellblock confrontation and again in the Court of General Sessions under uncertain circumstances. Even if these confrontations violated due process, however, we are satisfied that Mrs. Fine's in-court identification had an independent source. The robbery occurred in broad daylight and took several minutes, during which she stood face-to face with the robber. Immediately afterwards, the police showed her photographs of five men, not including appellant, and she could identify none of them. Subsequently, a police officer testified that he showed her five more pictures of Negro males, from which she unhesitatingly selected appellant's photo. According to her own recollection, she looked through half a book of photos before spotting appellant, and then later identified his photo in other books. Whichever recollection is correct, not only does this prior photographic identification pass the due process test of Simmons v. United States,[23] but in the circumstances it also establishes an independent source for her in-court identification.

### III. *No. 21,439*

■ In the dangerous weapon conviction, the Government admits to no error. The only issue we need consider is appellant's claim that the gun found on him at the time of his arrest should have been excluded because the arresting officers allegedly did not comply with Fed.R. Crim.P. 4(c) (3).[24] That rule provides in pertinent part that in cases of arrest pursuant to a warrant,

[t]he officer need not have the warrant in his possession at the time of

the arrest, but upon request he shall show the warrant to the defendant as soon as possible. If the officer does not have the warrant in his possession at the time of the arrest, *he shall then inform the defendant of the offense charged and of the fact that a warrant has been issued.* (Emphasis added.)

At a hearing on his motion to suppress the gun for lack of probable cause, appellant testified that police officers accosted him in a carry-out shop where he was drinking coffee. One called out, "Hey, boy, put your hands up." Then, without further communication, the officers grabbed him, searched him, and charged him with carrying a gun. Appellant did not see anything in their hands at the time. The officers themselves did not testify, and the motion to suppress was denied because the arrest was made pursuant to a warrant citing appellant for armed robbery.

The validity of the warrant, which was based on Frazier's confession in No. 21,-237, is not contested on appeal. But appellant now says his uncontroverted testimony establishes that the officers did not inform him of the warrant and the robbery charge at the time of the arrest as required by Rule 4(c) (3).

The Rule, its purpose, and its meaning are all best known to the draftsmen. Its application to a case such as this has not previously been argued in this court, and neither appellant nor the trial court thought of it below.[25] Its purpose is veiled by the Advisory Committee's laconic explanatory comment that it "safeguards the defendant's rights" where the arresting officers are not in possession of the warrant they are executing. The

23. *Supra* note 14. The test is whether "the photographic identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification." 390 U.S. at 384, 88 S.Ct. at 971.

24. Appellant seeks to construct a lengthy trial of taint leading from Frazier's confession to the gun found on him at the time of his arrest. Even if the taint was

not dissipated by the time it reached the gun, however, appellant has no standing to complain of it. Alderman v. United States, *supra* note 6.

25. When defense counsel made his motion to suppress, he apparently did not know that the arrest had been made pursuant to a warrant. He had learned of the warrant, however, by the time of the hearing on his motion.

mystery is enhanced by the Rule's ostensible negative implication that if the police *do* have a warrant with them, they need not show it to the defendant or offer him any other information concerning the grounds of the arrest unless he asks.

In the instant case, the record does not affirmatively establish that the police did not have the warrant in their possession. Nor does it show that the police did not provide the required information immediately subsequent to the arrest. Thus, because appellant did not press this claim below, there is substantial doubt as to how or whether the Rule was violated. We think it inappropriate on such a record to attempt to sort out the Rule's ambiguities or to decide whether and when it might be enforced by an exclusionary rule. Accordingly, we confine our inquiry to the question of possible prejudice to substantial rights of appellant which the Rule might have been designed to protect.

The information provision of the Rule might serve three different purposes. First, it might prevent any unexplained detention of a lawfully arrested defendant. Since upon discovery of the gun, the officers promptly charged appellant with carrying a dangerous weapon, he suffered no such injury. Second, by informing him of the warrant and charges against him, the Rule might safeguard an arrestee's privilege against self-incrimination. Appellant did not, however, incriminate himself.

■■ Finally, the Rule might be designed to prevent unexplained *arrests*, thus insuring against the possibility that a suspect will, out of ignorance, resist a lawful arrest. If so, the Rule must be read to require the police to announce their authority *before* making an arrest. Unlike 18 U.S.C. § 3109, which commands officers executing a search warrant to announce their authority and purpose and be refused admittance before breaking into a private home,[26] the language of the Rule does not expressly require a prior announcement.[27] Moreover, the statute protects the substantial interests of the privacy and physical integrity of the home, which are not threatened by unexplained arrests. Yet even the statutory requirements admit of an exception for exigent circumstances;[28] and in the instant case the police may well have had reasonable grounds to fear that appellant, who was wanted for armed robbery, was armed. If so, thy could search him for a weapon incident to his arrest without first complying with Rule 4(c) (3), even if the Rule ordinarily envisages a prior warning.[29] In any event, appellant was unlikely to, and did not in fact, resist the arrest, which was made by five police officers. Absent the need for a broad exclusionary rule to enforce Rule 4(c)

26. The officer may break open any outer or inner door or window of a house, or any part of a house, or anything therein, to execute a search warrant if, after notice of his authority and purpose, he is refused admittance or when necessary to liberate himself or a person aiding him in the execution of the warrant.
*See also* Masiello v. United States, 113 U.S.App.D.C. 32, 304 F.2d 399 (1962); Hair v. United States, 110 U.S.App.D.C. 153, 289 F.2d 894 (1961).

27. The Rule says only that if the arresting officer is not in possession of the warrant, "he shall *then*" give the required information. (Emphasis added.) Whether "then" means "at that time" or "subsequently" or nothing at all, it does not in terms make the information a condition precedent to a valid arrest.

28. *See* Sabbath v. United States, 391 U.S. 585, 591, 88 S.Ct. 1755, 20 L.Ed.2d 828 n. 8 (1968); Ker v. California, 374 U.S. 23, 39–40, 83 S.Ct. 1623, 10 L.Ed. 726 (1963) (opinion of Clark, J.); *id.* at 47, 83 S.Ct. at 1636 (opinion of Brennan, J.); Gilbert v. United States, 366 F.2d 923, 931–932 (9 Cir. 1966), cert. denied, 388 U.S. 922, 87 S.Ct. 2123, 18 L.Ed 1370 (1967).

29. Cf. Warden, Maryland Penitentiary v. Hayden, 387 U.S. 294, 298–300, 87 S.Ct. 1642, 18 L.Ed.2d 782 (1967); Terry v. Ohio, 392 U.S. 1, 27–30, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); *id.* at 33, 88 S. Ct. at 1886 (opinion of Harlan, J.).

(3)—a question we leave open for a case which properly presents it—we can find no reason to reverse his conviction.

No. 21,427: Reversed.
No. 21,437: Reversed.
No. 21,439: Affirmed.

BURGER, Circuit Judge (concurring in part and dissenting in part):

I accept the Government's concession in cases numbered 21,427 and 21,437 solely on the authority of Bruton v. United States, 391 U.S. 123, 88 S.Ct. 1620, (1968).

In 21,427 I concur in that part of the opinion holding that Appellant is without standing to object to any claimed Fifth Amendment violations arising out of Frazier's confession.[1] I dissent from that portion of the majority opinion which permits Appellant to re-open the identification issue on remand. As the majority concedes, witnesses "Reznick and Simpson had a good opportunity to observe their assailants at the time of the offense. They gave a reasonably accurate description of both robbers shortly thereafter." Since the witnesses had a prior adequate opportunity to observe, there was plainly an independent source for the in-court identifications. It is on this same basis that I concur in the majority holding in number 21,437 that the witness who made the in-court identification in the District Court is to be permitted to testify at the new trial without the necessity for a pre-trial hearing.

In number 21,439 the only issue before the court is whether an alleged failure by the police to inform Appellant of the offense charged and that there was an outstanding arrest warrant, thereby violating Fed.R.Crim.P. 4(c) (3), invalidates the arrest and accompanying search so as to require the suppression of the fruits of the search. The record is unclear as to all the relevant facts, and, accordingly, a remand would be necessary if the court were to conclude that a violation of Rule 4(c) (3) required exclusion. I concur in the majority's opinion which affirms without remand because, as the majority implicitly recognizes, a violation of Rule 4(c) (3) does not require that the fruits of an incidental search be suppressed. In addition to the reasons given by the majority, there are several other considerations which persuade me to delimit the impact of the Rule.

It states no more than the obvious to recall that on numerous occasions the Supreme Court has emphasized that the Fourth Amendment prohibits only "unreasonable" searches and that reasonableness is determined by relating the scope of the search to the underlying facts and all the surrounding circumstances. In analyzing the instant case to determine whether the search was reasonable, we have a duty to balance the need for the search against the degree of intrusion which the search entails. See Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed. 2d 889 *passim* (1968). This calls for a careful scrutiny of the facts of this case and not merely a consideration of the abstract question of whether the failure to offer the information outlined in Rule 4(c) (3) vitiates the arrest supporting the search.

In weighing the significance of Rule 4(c) (3) it should first be noted that the Rule speaks solely about the *timing* of communication information—the relevant point here being the alleged failure of the police to inform Bryson of the charge and the warrant thereby resulting in his first learning this information not upon arrest but at his preliminary hearing, a day later.[2] Quite clearly, this

---

1. My views as to Frazier's confessions are set out in Frazier v. United States, 136 U.S.App.D.C. ——, ——, 419 F.2d 1161, 1171 (1969) (dissenting opinion).

2. Although at oral argument there was some discussion which indicated that Rule 4(c) (3) required the giving of this information prior to arrest and search, there is no support whatsoever for this in the statute. The Rule merely provides that sometime during the arrest the arrestee be told of the charge and the warrant:

The warrant shall be executed by the arrest of the defendant. * * * If the officer does not have the warrant in

purely technical violation of 4(c) (3) is unrelated to *the grounds* for Bryson's arrest and, therefore, the Court is not faced with a questionable restraint on liberty because of the arrest.

Although it is obviously desirable that arrested persons be promptly informed of the reasons for their detention, the significance of being informed at the time of arrest is neither boundless nor invariable. Appellant's counsel arguing by analogy from 18 U.S.C. § 3109,[3] urges that the announcement requirement of 4 (c) (3) was intended to encourage an arrested person to submit without resistance which it is assumed he will do more readily if the grounds are stated. While this policy is not a factor to be totally ignored, the assumed basis is not necessarily a universal truth.[4] Appellant has conceded that the announcement provisions have little relevance to this particular case.[5] Moreover, 18 U.S.C. § 3109[6] is not instructive as to 4(c) (3); the former specifies announcement of purpose before forcing entry[7] whereas 4(c) (3) neither specifies that announcement be made prior to arrest nor does it permit the destruction of private property.

Is it likely that the police would refuse to answer an inquiry as to the cause for arrest? There is no indication that Bryson made such inquiry or that the police refused to cooperate; thus, it is more probable than not that Appellant was fully aware of the officer's authority and purpose, thereby making the announcement a useless gesture. Miller v. United States, 357 U.S. 301, 310, 78 S. Ct. 1190, 2 L.Ed.2d 1332 (1958), teaches that the law does not always demand literal compliance when it constitutes ritualistic formalism. Whatever the value in a prompt statement of the basis for an arrest, surely it cannot be said to be of such crucial significance on this record as to render the police conduct unreasonable. In assessing police conduct we ought not use rules mechanically; the rule of reason must control.

Moreover, a large factor underlying 4 (c) (3) must include the protection of law enforcement officers; as the Supreme Court recently pointed out, the occupational hazards are substantial and the safety of policemen is essential to society:

We are now concerned with * * * the more immediate interest of the police officer in taking steps to assure himself that the person with whom he is dealing is not armed with a weapon that could unexpectedly and fatally be

---

his possession *at the time of the arrest*, he shall then inform the defendant of the offense charged and of the fact that a warrant has been issued. (Emphasis added.)

3. The officer may break open any outer or inner door or window of a house, or any part of a house, or anything therein, to execute a search warrant, if *after notice of his authority and purpose*, he is refused admittance or when necessary to liberate himself or a person aiding him in the execution of the warrant. (Emphasis added.)

4. One can speculate, with abundant factual predicates in thousands of case records, that a man who has just committed a homicide or other grave crime may well resist arrest forcibly if he is told that is the basis, whereas he might well submit quietly if the stated reason is that the rear lights of his car are not functioning— and both violations might well be cor-

rect. Hence the random judicial speculation at appellate levels where the predicates have not run the gauntlet of challenge and cross examination encompassed in the adversary process are often lacking in validity.

5. "No attempt to escape or to endanger anyone was made, nor could one have been reasonably anticipated under the circumstances of the show of force by the police." Appellant's Reply Brief at 3.

6. *See* footnote 3 *supra*.

7. For example, under section 3109 no doors may be broken unless it is absolutely necessary to do so, *see* Miller v. United States, 357 U.S. 301, 310, 78 S.Ct. 1190, 2 L.Ed.2d 1332 n. 10 (1958), whereas Rule 4(c) (3) does not specify a prior announcement nor does it permit the destruction of property under any circumstances.

used against him. Certainly it would be unreasonable to require that police officers take unnecessary risks * * *. American criminals have a long tradition of armed violence, and every year in this country many law enforcement officers are killed in the line of duty, and thousands more are wounded. Virtually all of these deaths and a substantial portion of the injuries are inflicted with guns and knives. Terry v. Ohio, 392 U.S. at 23–24, 88 S.Ct. at 1881 (footnote omitted). [The omitted footnote pointed out that 55 of the 57 law enforcement officers killed in 1966 died from gunshot wounds.]

The arrest warrant on which the officers acted in this case charged Bryson with *armed* robbery; therefore, a high degree of concern for safety was in order and their precaution was fully justified.[8] A gun was found in Bryson's belt.

The Supreme Court has frequently pointed out a second justification for conducting a search incident to an arrest— to prevent the destruction of evidence of the crime. *See, e.g.,* Preston v. United States, 376 U.S. 364, 367, 84 S.Ct. 881, 11 L.Ed.2d 777 (1964). In the instant case, of course, this concern was valid since a gun had been used in several of the robberies.

Finally the Supreme Court has often emphasized that the "major thrust [of the exclusionary rule] is a deterrent one" Terry v. Ohio, 392 U.S. at 12, 88 S.Ct. at 1875, 20 L.Ed.2d 889; the reason for the rule dissolves when this primary purpose cannot be served. No reasons have been suggested to indicate a police motive to avoid the 4(c) (3) announcement, as may be the case, for example, in the failure to give the required warnings as set forth in Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). In sum, it seems to me that to exclude the evidence here would be an extraordinarily crude way to advance ·a relatively minor interest; such a blunt instrument is not needed to discourage conduct which police have little interest in maintaining.

---

8. *See* Jones & Dorman v. United States, Nos. 21,664 & 21,736 (D.C.Cir. May 5, 1969) (Leventhal, J., dissenting).