STATE OF NEBRASKA, APPELLEE, V.
JOHN PEREA, APPELLANT.

316 N.W.2d 312

Filed February 19, 1982. No. 44169.

Anthony S. Troia and James E. Riha for appellant.

Paul L. Douglas, Attorney General, and Mel Kam-

merlohr for appellee.

Heard before KRIVOSHA, C.J., BOSLAUGH, McCOWN, CLINTON, BRODKEY, and HASTINGS, JJ.

BRODKEY, J.

John Perea, defendant and appellant herein, appeals to this court from his conviction by a jury in the District Court of Douglas County, Nebraska, of first degree sexual assault in violation of Neb. Rev. Stat. § 28-319(1) (a) (Reissue 1979). On March 2, 1981, Perea was sentenced by the trial court to a term of from 10 to 15 years' imprisonment in the Nebraska Penal and Correctional Complex. We affirm.

The evidence discloses that on August 14, 1980, the defendant and three other individuals, Robert Hilario, Donald Thompson, and Joseph Castaneda, devised a plan to have sexual intercourse with Hilario's former girl friend, the victim of the sexual assault. The victim, born June 29, 1962, was a schoolmate of one of the named individuals and had become acquainted with the defendant through Hilario. At approximately 11 p.m. on August 14, 1980, Castaneda telephoned the victim at her home and asked if she would like to go out and talk. She was subsequently picked up at her home by Castaneda at 11:30 p.m. and driven to Spring Lake Park, located in south Omaha. It appears that the four named individuals had designated Spring Lake Park as the place the victim was to be taken. Shortly upon their arrival at the park, three individuals approached the parked vehicle and pulled the victim from the car. The individuals assaulting the victim kept her eyes covered with their hands. She was carried to a nearby ravine in the woods and raped by at least three of the individuals. The exhibits admitted at trial also clearly indicate that the victim was seriously beaten by her attackers.

Castaneda was subsequently arrested for the crime, along with Perea, Hilario, and Thompson. Castaneda was tried on December 1, 1980, and found guilty of

first degree sexual assault. Thereafter, at defendant's trial on January 12, 1981, Castaneda was subpoenaed by the Douglas County attorney prosecuting the case to testify at defendant's trial. In this regard, the record discloses the following questioning of Castaneda: "Q- (By Mr. Schatz). You have been convicted of this first-degree sexual assault and you are awaiting sentencing at this time? A- Yes. Q- What is your intention if asked to testify against Mr. Perea regarding your knowledge of the events that took place at the ball field at 20th and F Street on the evening of August 14, 1980, and the early morning hours of August 15, 1980? A- I refuse to testify. Q- And for the reason that what you say may tend to incriminate you? A- Yes. Q- Have you discussed this with your attorney? A- Yes. Q- And it is your decision to invoke your Fifth Amendment rights, those being your right not to testify for the reason that your testimony may tend to incriminate you? A- Yes."

Thereafter, the trial judge ordered Castaneda to testify, pursuant to Neb. Rev. Stat. § 29-2011.01 (Reissue 1979). Castaneda then testified and implicated the defendant as being present and participating in the assault on the night in question.

On appeal to this court the defendant's sole assignment of error is that the trial court erred in overruling a motion for a mistrial and a motion to dismiss the information at the close of the State's evidence. The only issue which we need to address in this case is whether the trial court erred in ordering Castaneda to testify as to the events on August 14, 1980, despite his desire to remain silent.

We note that as a general rule the only grounds on which a witness may invoke his privilege against self-incrimination and refuse to answer a question is that the answer may subject him to a penalty, forfeiture, or punishment for a crime. "A witness cannot claim the privilege not to incriminate himself unless at the time he is liable to prosecution and punishment for the offense which would be disclosed. . . .

"Similarly, a witness cannot refuse to answer where he has been tried for the offense and acquitted or convicted, particularly where he has already served his sentence." 98 C.J.S. *Witnesses* § 437 at 253-54 (1957). See, also, Annot., 9 A.L.R.3d 990 (1966).

It should be noted, however, that in the instant case the witness Castaneda was convicted of his participation in the offense, not by a plea of guilty to the charge of first degree sexual assault but following a trial to a jury. He subsequently appeared at the trial of the defendant, John Perea, at which time and place he invoked his fifth amendment rights. The court then ordered him to testify, under the provisions of § 29-2011.01, on the theory that he was no longer subject to prosecution for the crime for which his testimony was being elicited against Perea. The questions presented, therefore, are whether the mere conviction of Castaneda, who had not as yet been sentenced at the time of Perea's trial, was sufficient to result in the loss of his privilege against self-incrimination and, also, what the effect of a pending right to appeal the conviction to a higher court would be. This latter question, however, is not before us in this appeal, for the reason that the record clearly shows that Castaneda's right to appeal to this court for his conviction for the crime in question has long since expired.

On the question of whether Castaneda's conviction, in and of itself, was sufficient to result in the loss of his privilege against self-incrimination, it appears that the authorities in jurisdictions are divided. Many of the cases hold that the privilege is lost upon a conviction of guilt; however, authority can be found which indicates that the privilege against self-incrimination is lost only when there has been a conviction and sentence. These cases are collected in an annotation found at 9 A.L.R.3d 990 at 996 et seq. See, especially, *Reina v. United States*, 364 U.S. 507, 81 S. Ct. 260, 5 L. Ed. 2d 249 (1960); *United States v. Romero*,

249 F.2d 371 (2d Cir. 1957); 8 Wigmore on Evidence § 2279 (1961); *Brown v. Walker*, 161 U.S. 591, 16 S. Ct. 644, 40 L. Ed. 819 (1896).

We have concluded, however, that it is unnecessary for us to reach or decide the above issues, for the reason that the defendant Perea is not entitled to raise them in his appeal to this court. He complains of an alleged violation of the constitutional rights of Castaneda, and not of his own constitutional rights. He lacks standing to challenge the testimony of his copartici- pant, which implicated him. The law is well estab- lished that the fifth amendment right to be free from self-incrimination is a personal right of the witness. See *United States v. Bruton*, 416 F.2d 310 (8th Cir. 1969), and cases therein cited. The same rule has been applied not only to the fifth amendment but also to the fourth and sixth amendments. An excellent summary of the authorities, both federal and state, is contained in the recent case of *State v. Graham*, 291 N.W.2d 345, 347-48 (Iowa 1980), and we quote from the opinion in that case.

"Defendant's motion to suppress was based on the derivation of evidence from Fitzgerald's allegedly illegal arrest and interrogation without the benefit of counsel. He argues the evidence must be excluded as 'fruit of the poisonous tree.' *Wong Sun v. United States*, 371 U.S. 471, 488, 83 S. Ct. 407, 9 L. Ed. 2d 441, 455 (1963). The trial court ruled that Fitzgerald was arrested but felt there was no need to determine the legality of the arrest because the fourth and fifth amendment rights implicated by these police actions are 'personal rights' and that the 'exclusionary rule should not be extended to others [than] that person' whose rights are violated. We concur in the trial court's ruling.

"In analyzing a 'poisonous tree' argument in the con- text of this case, one thing is clear: Not everybody is entitled to complain about the quality of its fruit. This defendant contends Fitzgerald's fourth and fifth

amendment rights were abridged by the arrest and interrogation which followed. We need not reach that issue, because he may not raise them, even if they were established.

"The Supreme Court has consistently ruled that exclusion of evidence garnered in violation of the fourth amendment may be obtained only by those people who have had an interest protected by that amendment violated. *E.g.*, *Rakas v. Illinois* 439 U.S. 128, 140, 99 S. Ct. 421, 425, 58 L. Ed. 2d 387, 399 (1978); *Alderman v. United States*, 394 U.S. 165, 174, 89 S. Ct. 961, 967, 22 L. Ed. 2d 176, 187 (1969). The rationale of the rule against vicarious assertion of the constitutional right is the personal nature of that right. *Rakas v. Illinois*, 439 U.S. at 140, 99 S. Ct. at 425, 58 L. Ed. 2d at 399; *Alderman v. United States*, 394 U.S. at 174, 89 S. Ct. at 966, 22 L. Ed. 2d at 187.

"Assertions of *fifth* amendment rights have similarly been held to be personal. *Couch v. United States*, 409 U.S. 322, 93 S. Ct. 611, 34 L. Ed. 2d 548 (1973), involved an Internal Revenue Service summons on the defendant's accountant. The Court quoted Mr. Justice Holmes: 'A party is privileged from producing the evidence but not from its production.' *Id.* at 328, 93 S. Ct. at 616, 34 L. Ed. 2d at 554 (quoting *Johnson v. United States*, 228 U.S. 457, 458, 33 S. Ct. 572, 572, 57 L. Ed. 919, 920 (1913)). The Court then went on to say:

"'The Constitution explicitly prohibits compelling an accused to bear witness "against himself": it necessarily does not proscribe incriminating statements elicited from another. . . . *It is extortion of information from the accused himself that offends our sense of justice.*' *Id.* (emphasis added). Other Supreme Court cases have also emphasized the personal nature of fifth amendment rights. *See, e.g., United States v. Nobles*, 422 U.S. 225, 233, 95 S. Ct. 2160, 2167, 45 L. Ed. 2d 141, 150 (1975) (discovery of defense investigator's written report); *Bellis v. United States*, 417 U.S. 85, 91, 94 S. Ct. 2179, 2184, 40 L. Ed. 2d 678, 685 (1974)

(subpoena to partner of small law firm to produce partnership's financial records).

"Federal courts of appeals considering the question have declined to draw a distinction between fourth and fifth amendment rights, ruling that fifth amendment rights may not be asserted vicariously. *United States v. Shaffner*, 524 F.2d 1021, 1022 (7th Cir. 1975), *cert. denied*, 424 U.S. 920, 96 S. Ct. 1126, 47 L. Ed. 2d 327 (1976); *United States v. Skoleck*, 474 F.2d 582, 584 (10th Cir. 1973); *Byrd v. Comstock*, 430 F.2d 937, 938 (9th Cir. 1970); *Bryson v. United States*, 419 F.2d 695, 699 (D.C. Cir. 1969); *United States v. Bruton*, 416 F.2d 310, 312 (8th Cir. 1969)." See, also, *Hill v. State*, 500 P.2d 1080 (Okla. Crim. 1972).

We conclude that Perea has no standing in this appeal to raise the issue of a violation of Castaneda's constitutional right against self-incrimination and defendant Perea's conviction and sentence were proper and must be affirmed.

AFFIRMED.

WHITE, J., participating on briefs.