**UNITED STATES OF AMERICA, Plaintiff**

**v.**

**ATCHLEY RICHARDSON, a/k/a "ATCHLEY RICHARDSON, JR.," and SEAN ELSKOE, Defendants**

Crim. No. 97-157

District Court of the Virgin Islands

Div. of St. Thomas and St. John

March 23, 1998

STANLEY DE JONGH, ESQ., (Assistant U.S. Attorney) *for Plaintiff*

CLAUDETTE FERRON, ESQ., St. Thomas, U.S.V.I., *for Defendant Richardson*

MOORE, *Chief Judge*

## MEMORANDUM

This matter is before the Court on defendant Atchley Richardson, Jr.'s ["Richardson"] motion to suppress based on the exclusionary rule. Argument was heard March 9, 1998.

## INTRODUCTION

This matter arises out of a failed "controlled delivery" of handguns by an officer of the Bureau of Alcohol, Tobacco and Firearms ["ATF"] posing as a postal employee, along with uniformed officers of the United States Postal Service, the Drug Enforcement Agency, and the Virgin Islands Police Department. The postal service intercepted two handguns and related items in a package being mailed to St. Thomas. The postal service contacted ATF and developed the plan to install a transponder in the package, deliver it, and trace its path. Unfortunately, the transponder failed, and the guns were lost. The Government alleges that the guns were delivered to defendant Sean Elskoe ["Elskoe"] who passed the package on to Richardson and that Richardson took the weapons to his grandmother's apartment in the same complex.

The ATF officer interviewed Elskoe, asked where the guns were located, told Elskoe he had fifteen seconds to tell him, and began counting backwards from fifteen.[1] Defendant Elskoe then pointed at Richardson's grandmother's apartment where Richardson at times resided. The other officers entered the apartment and found evidence of other postal mailings which the government maintains is relevant. From the vantage point of the Richardson front porch, an officer noticed in a nearby dumpster the packaging which had previously held the guns. Inside the packaging was the failed transponder. Defendant Elskoe was Mirandized, or perhaps re-Mirandized, and taken to the police station where he ultimately signed a written statement describing what happened with the weapons.

During a hearing on numerous motions to dismiss and suppress held February 11, 1998, this Court suppressed the verbal and non-verbal statements which were made at the scene following the officer's countdown. This Court found that the conduct of the ATF

---

[1] It is unclear whether or not Elskoe had been Mirandized at this point.

agent was sufficiently coercive to justify suppression of Elskoe's responses. All statements made en route to the police station were also suppressed. The signed statement given at the station was not suppressed because time and a meal had removed any possibility of taint from the earlier coercion. Defendant Richardson theorizes that because the statement in which Elskoe pointed at Richardson's apartment was suppressed, the evidence found in his grandmother's apartment and in the dumpster should be considered "fruit of the poisonous tree" and not used against him at trial.

## DISCUSSION

The first, and ultimately dispositive, issue is whether Richardson has standing to raise this motion based on a violation of Elskoe's constitutional rights.

■ Evidence which is obtained through unconstitutional means may not be used against the person whose rights were violated. *See Silverthorne Lumber Co. v. United States*, 251 U.S. 385, 392, 64 L. Ed. 319, 40 S. Ct. 182 (1919) ("The essence of a provision forbidding the acquisition of evidence in a certain way is that not merely evidence so acquired shall not be used before the court but that it shall not be used at all."); *Nardone v. United States*, 308 U.S. 338, 340, 84 L. Ed. 307, 60 S. Ct. 266 (1939) (first using term "fruit of the poisonous tree"); *Wong Sun v. United States*, 371 U.S. 471, 9 L. Ed. 2d 441, 83 S. Ct. 407 (1963). This rule, dubbed the "exclusionary rule," is most often invoked in the context of prosecutors attempting to present evidence garnered in an illegal search in violation of the Fourth Amendment. *See, e.g., Weeks v. United States*, 232 U.S. 383, 58 L. Ed. 652, 34 S. Ct. 341 (1914); *Mapp v. Ohio*, 367 U.S. 643, 6 L. Ed. 2d 1081, 81 S. Ct. 1684 (1961).

This exclusionary rule, however, has not been extended to benefit a defendant seeking to invoke the violation of a co-defendant's Fourth Amendment guarantees. The Supreme Court has incontrovertibly established that a defendant simply does not have standing to claim for her own defense a constitutional violation of another's Fourth Amendment rights. *Alderman v. U.S.*, 394 U.S. 165, 22 L. Ed. 2d 176, 89 S. Ct. 961 (1969).

The established principle is that suppression of a Fourth Amendment violation can be successfully urged only by

those whose rights were violated by the search itself, not by those who are aggrieved solely by the introduction of damaging evidence. Coconspirators and codefendants have been afforded no special standing. . . . . [T]he general rule [is] that Fourth Amendment rights are personal rights which, like some other constitutional rights may not be vicariously asserted. . . . There is no necessity to exclude evidence against one defendant in order to protect the rights of another. No rights of the victim of an illegal search are at stake when the evidence is offered against some other party.

394 U.S. at 171-174.

The Supreme Court has not in any of its holdings dealt with standing to seek the suppression of the fruits of a coerced statement of another at the scene of the crime, nor any other similar Fifth Amendment violation. Indeed, it has been stated that "[a]lthough a significant body of case law has developed concerning claims by criminal defendants of the Fourth Amendment rights of third parties, there is no controlling body of precedent for the Fifth Amendment." *Nezowy v. United States*, 723 F.2d 1120, 1128-29 (3d Cir. 1983) (Adams, J., dissenting).

In *Alderman*, Justice Fortas's separate opinion points out that perhaps standing to suppress evidence garnered through illegal search and seizure "stem[s] in part from the Fifth Amendment's privilege against self-incrimination. Only the person whose right has been violated can claim the protection of that privilege." 394 U.S. 165 at 205 (Fortas, J., concurring in part and dissenting in part) (*citing* 8 J. Wigmore, Evidence § 2196 (McNaughton rev. 1961) (discussing the privilege in the context of testimonial duty)).[2]

The Courts of Appeals most often have dealt with Fifth Amendment violations in the context of violations of *Miranda v. Arizona*, 384 U.S. 436, 16 L. Ed. 2d 694, 86 S. Ct. 1602 (1967). For example, the

---

[2] As for the application of Fourth Amendment principles to the Fifth Amendment, only California allows vicarious standing for illegal searches and seizures, and yet California does not allow such standing for Fifth Amendment violations. *People v. Varnum*, 66 Cal. 2d 808, 811, 427 P.2d 772, 775, 59 Cal. Rptr. 108 (1967); *as cited by Bryson v. United States*, 136 U.S. App. D.C. 113, 419 F.2d 695, 699 (D.C. Cir. 1969).

United States Court of Appeals for the District of Columbia Circuit held that appellants did not have standing to take issue with identifications of appellants resulting from a confession of a codefendant given in violation of *Miranda*. *Bryson*, 419 F.2d at 698-99. *See also Gissendanner v. Wainwright*, 482 F.2d 1293, 1296 and n.3 (5th Cir. 1973) ("admission of evidence . . . the result of [coconspirator's] inadmissible confession in no way encroaches their right to counsel or privilege against self-incrimination. The exclusionary rule does not provide a basis for asserting these rights in this context.").

The Courts of Appeals have not allowed defendants to "assert the Fifth Amendment right against self incrimination on behalf of a witness, nor, if the witness himself asserts the privilege, take advantage of an error of the court in overruling it." *United States v. Fredericks*, 586 F.2d 470, 481 (5th Cir. 1978). *See also Bowman v. United States*, 350 F.2d 913, 915-16 (9th Cir. 1965), *cert. denied*, 383 U.S. 950, 16 L. Ed. 2d 212, 86 S. Ct. 1209 (1966) (denying standing to raise objection to improper denial of another's right to "take the Fifth.").

The Courts of Appeals have also dealt with violations of attorney-client privilege. The Fifth Circuit Court of Appeals has held in the context of a violation of attorney-client privilege that a defendant's "Fifth and Sixth Amendment's rights, like Fourth Amendment rights, are personal in nature and cannot be asserted vicariously." *United States v. Fortna*, 796 F.2d 724, 732 (5th Cir. 1986).

The Courts of Appeals have not allowed a defendant standing to raise a violation of a codefendant's rights under *Mallory v. United States*, 354 U.S. 449, 1 L. Ed. 2d 1479, 77 S. Ct. 1356 (1957) (unnecessary delay in arraignment violation of Fifth Amendment and confession not usable). *See Long v. United States*, 124 U.S. App. D.C. 14, 360 F.2d 829, 833 (D.C. Cir. 1965) (even if violation occurred, "[a]ppellants could not raise the issue since no right of theirs was violated."). Nor have defendants been given standing to raise objection vicariously to illegal issuance of subpoenas to others. *Sachs v. Gov't of the Canal Zone*, 176 F.2d 292, 296 (5th Cir. 1949), *cert. denied*, 338 U.S. 858, 94 L. Ed. 525, 70 S. Ct. 100 (1949).

▇ So it is clear that the general rule is that defendants do not have standing to raise a third-party's Fifth Amendment violations

for their own defense. And in the words of the Supreme Court in *Alderman*,

> this Court is not convinced that the additional benefits of extending the exclusionary rule to other defendants would justify further encroachment upon the public interest in prosecuting those accused of crime and having them acquitted or convicted on the basis of all evidence which exposes the truth.

*Alderman*, 394 U.S. at 174-75.

In some cases, however, a defendant may have standing to claim violation of his own Fifth Amendment right to due process if the police misconduct directed at a codefendant was so shocking and intentional that its introduction could deny the defendant a fair trial. *Fortna*, 796 F.2d at 732 n.8. For example, a defendant does have standing to raise a Fifth Amendment claim where a codefendant's confession implicating the two of them is the result of prolonged torture, including beatings to the face and genitalia. *Bradford v. Johnson*, 476 F.2d 66 (6th Cir. 1973), *aff'g* 354 F. Supp. 1331 (E.D. Mich. 1972). *See also United States v. Chiavola*, 744 F.2d 1271, 1273 (7th Cir. 1984) ("Due process is implicated when the government seeks a conviction through use of evidence obtained by extreme coercion or torture."); *LaFrance v. Bohlinger*, 499 F.2d 29 (1st Cir. 1974), *cert. denied*, 419 U.S. 1080, 42 L. Ed. 2d 674, 95 S. Ct. 669 (1974); *United States ex rel. Cunningham v. DeRobertis*, 719 F.2d 892, 895-96 (7th Cir. 1983).

The conduct of the law enforcement officers in this instance clearly does not rise to such a level. The introduction of the materials complained of could in no way result in a "fundamentally unfair trial." *Chiavola*, 744 F.2d at 1273 (coercing a codefendant into phoning appellant who then implicates himself in overheard conversation did not violate appellant's Fifth Amendment rights). Indeed, the conduct of the officers here was "a far cry form the sort of third-degree physical or psychological coercion that might prompt us to disregard altogether the societal interest in law enforcement" by suppressing the complained of evidence. *Fredericks*, 586 F.2d at 481.

## CONCLUSION

■ Because defendant Richardson does not have standing to complain of a violation of Elskoe's Fifth Amendment right against self-incrimination, an Order will be entered denying this motion.

ENTERED this 23rd day of March, 1998.

## ORDER

For the reasons stated in the foregoing Memorandum, it is hereby

ORDERED that defendant Richardson's motion to suppress based on the exclusionary ruled is DENIED.

ENTERED this 23rd day of March, 1998.