972 A.2d 1127

STATE OF NEW JERSEY, PLAINTIFF–RESPONDENT,
v. ANGELA BAUM, DEFENDANT, AND JERMEL
MOORE, DEFENDANT–APPELLANT.

Argued March 11, 2008—Re-argued September
8, 2008—Decided June 15, 2009.

408

410

*Shara P. Saget* and *Mark H. Friedman,* Assistant Deputies Public Defender, argued the cause for appellant (*Yvonne Smith Segars,* Public Defender, attorney; *Ms. Saget,* on the letter briefs).

*Natalie A. Schmid Drummond,* Deputy Attorney General, argued the cause for respondent (*Anne Milgram,* Attorney General of New Jersey, attorney).

Justice HOENS delivered the opinion of the Court.

This Court granted defendant Jermel Moore's motion for leave to appeal from the Appellate Division's judgment that reversed the trial court's order suppressing evidence. From the time when the suppression motion was filed before the trial court and continuing through the argument and decision on appeal, defendant framed the issue in terms of his assertion that the items he sought to suppress had been seized during a warrantless search of the automobile in which he was a passenger.

During the proceedings before this Court, however, it became apparent that the critical element in defendant's analysis was the alleged illegal detention and coercive interrogation of the vehicle's driver, co-defendant Angela Baum. That is, defendant argued that

the warrantless search of the automobile was unconstitutional because it was based on the incriminating statements Baum made at a time when her constitutional rights were being violated. We therefore entertained supplemental briefs and oral arguments by the parties addressed to whether defendant had standing to assert Baum's right to be free from self-incrimination as the basis for his motion to suppress the fruits of the automobile search.

It has become plain that, regardless of the theory on which defendant's suppression motion was considered and decided by the motion court and the appellate panel, its essential predicate was the attempted vicarious assertion of Baum's constitutional right against self-incrimination. That right, however, both as articulated in the Fifth Amendment of the United States Constitution and as embraced in our statutory and common law, is a purely personal one. We therefore conclude that defendant lacks standing to assert the violation of that right as the basis for his challenge to the search at issue.

In the alternative, because defendant's possessory interest in the contraband affords him automatic standing to challenge the warrantless search of the automobile, we have separately considered his motion in that light. Having done so, we conclude that the Appellate Division correctly analyzed the issue and applied the appropriate precedents in reaching its judgment.

We affirm and modify the decision of the Appellate Division vacating the order of suppression, and we remand this matter for further proceedings.

I.

The facts and circumstances surrounding the stop and search of the automobile in which defendant was a passenger are fully described in the published decision of the Appellate Division, *see* *State v. Baum*, 393 *N.J.Super.* 275, 280–84, 923 *A.*2d 276 (App.Div. 2007), and we therefore need only summarize them briefly.

Late at night, a Bernards Township police officer saw a vehicle with tinted windows at a gas station near the entrance to Route 78. He noticed that the vehicle had a New Jersey license plate but no inspection sticker. He then learned that the owner's license was suspended but that there were no reports that the vehicle had been stolen. The officer saw the vehicle leave the gas station and turn onto the ramp leading to the highway, which he described as a known drug courier route. He stopped the vehicle, radioed the license plate information and his location to police headquarters, and approached. Everything that followed was captured on the patrol car's video recording system.

When Baum, the driver, could not produce a license or an insurance card, and when she turned over a vehicle registration that was not in her name or in the name of any of the passengers, the officer asked her to step out of the vehicle. As his inquiries continued, defendant, who was the front seat passenger, and Baum, who was standing behind the vehicle and in front of the patrol car, gave the officer conflicting explanations and answers, providing different information about where they had been and where they were going. When the officer questioned her further, Baum's responses were inconsistent with what she had said earlier.

Because Baum had neither a license nor any other form of identification with her, the officer asked for her name, address, and birth date in order to verify that she was a validly licensed driver. Due to other, unrelated police business on the radio, it took several minutes for the officer to transmit that request and receive a response. While he was waiting for that information, he continued to make inquiries of her. As the encounter continued, the officer told Baum that her answers did not match defendant's, and he made his disbelief apparent. Another officer arrived and stood nearby.

Eventually, the first officer told Baum that he suspected that there was something in the car that should not be there and asked her if she wanted to tell him what was going on. Baum said that

they had been smoking marijuana earlier but that she did not know whether defendant had brought any into the car. When the officer said that he could summon a drug-sniffing dog, Baum admitted that there was marijuana in the car, but told him that it belonged to defendant.

A short time later, the officer learned from the dispatcher that Baum's license was suspended, at which point he arrested her and advised her of her rights. *See Miranda v. Arizona,* 384 *U.S.* 436, 86 *S.Ct.* 1602, 16 *L.Ed.*2d 694 (1966). She then waived her rights and revealed where in the vehicle a container of drugs could be found. When the officers located it, they found cocaine and marijuana inside. After being advised of his rights, defendant told the officers that the cocaine was his, but that the marijuana was Baum's. The entire encounter, from the time of the initial stop through Baum's arrest, lasted twenty-six minutes.

## II.

Based on the evidence retrieved from the vehicle, defendant and Baum were indicted for possession of a controlled dangerous substance (cocaine), *N.J.S.A.* 2C:35–10(a)(1), and possession, more than fifty grams, (marijuana), *N.J.S.A.* 2C:35–10(a)(3). Both Baum and defendant filed motions to suppress the evidence discovered in the vehicle in which they challenged the warrantless search conducted at the roadside.

The Law Division judge conducted a hearing on the motions during which he reviewed the videotape taken by equipment located in the police cruiser and which depicted the stop, the officer's questioning of both Baum and defendant, and the search. In addition, the officer who initiated the stop and conducted the investigation testified. After considering the evidence, the court granted the motion suppressing the drugs found in the vehicle.

In its analysis, the motion court concluded that the initial vehicle stop was lawful and that the length of time involved in the stop and the investigation, although somewhat delayed, was permissible because of the time needed to receive information about

Baum's license. Nonetheless, the court found that the officer's behavior toward Baum was coercive, that the questioning of her amounted to an impermissible custodial interrogation, and that the officer should have given her the warnings required by *Miranda* after she admitted that they had been smoking marijuana earlier. In addition, the motion court concluded that the information provided by Baum was insufficient to constitute the specific and articulable facts needed to support the warrantless search of the vehicle. The court therefore granted the suppression motion.

The Appellate Division reversed the suppression order and directed that the evidence seized could be used in the prosecution of both defendant and Baum. *Baum, supra,* 393 *N.J.Super.* at 292, 923 *A.*2d 276. In its analysis, the appellate panel reasoned that the officer's suspicions increased as the answers to his questions about the vehicle and its occupants continued to yield conflicting responses. The panel commented that, under such circumstances, "the constitution does not require police officers to ignore the suspicion engendered by these conflicts, provided the detention is not unduly extended." *Id.* at 288, 923 *A.*2d 276. The panel noted that officers must investigate using the "least intrusive" techniques in a way "likely to confirm or dispel their suspicions quickly," *id.* at 287, 923 *A.*2d 276, and recognized that this Court has imposed restrictions based on whether a particular encounter has become more intrusive than necessary, *id.* at 288, 923 *A.*2d 276.

Noting that it was reasonable for the officer to separate Baum, the driver, from defendant, the front seat passenger, and finding that Baum's responses gave the officer reason to suspect that there were drugs in the vehicle, the appellate panel disagreed with the motion court's conclusion that the search was conducted without probable cause. *Id.* at 289–90, 923 *A.*2d 276. Further, the panel rejected the argument that the officer's comment to Baum that he could summon a drug-sniffing dog was unduly coercive, *id.* at 290, 923 *A.*2d 276, and disagreed that the roadside questioning of Baum constituted a custodial interrogation, *id.* at

291, 923 *A.2d* 276. Finally, the panel observed that even if the encounter amounted to a custodial interrogation, the circumstances were sufficiently exigent to obviate the need for a warrant and to permit the search of the vehicle. *Id.* at 291–92, 923 *A.2d* 276.

We granted defendant's motion for leave to appeal, 192 *N.J.* 473, 932 *A.2d* 25 (2007), and we heard oral argument on the merits on March 11, 2008. Following oral argument, we directed the parties [1] to file supplemental briefs focused on whether defendant had standing to raise a challenge to a potential violation of Baum's right against self-incrimination. We thereafter heard and considered additional oral arguments directed to that question. We now affirm.

### III.

■ We begin with our evaluation of the question addressed in the supplemental briefing, namely, whether defendant has standing to assert that the questioning of Baum violated her rights against self-incrimination. That issue arises based on two separate arguments on which defendant relied during the initial argument on the appeal, each of which was an important part of the

---

[1] After the initial oral argument and after this Court had directed the parties to submit the supplemental briefs, counsel for Baum filed a separate motion seeking to participate in the appeal. Unlike defendant, Baum had not appeared for the second day of the suppression hearing, at which time a bench warrant was issued for her arrest, and had not participated in the appeal from the trial court order. We denied her motion for leave to participate in accordance with longstanding principles because she was, and remains, a fugitive. *See Matsumoto v. Matsumoto*, 171 *N.J.* 110, 119–20, 792 *A.2d* 1222 (2002) (commenting that "'fugitive from justice may not seek relief from the judicial system whose authority he or she evades'" (quoting Martha B. Stolley, *Sword or Shield: Due Process and the Fugitive Disentitlement Doctrine*, 87 *J.Crim. L. & Criminology* 751, 752 (1997))); *State v. Morales*, 91 *N.J.* 213, 450 *A.2d* 542 (1982) (summarily dismissing appeal because of fugitive status of defendant); *State v. Rogers*, 90 *N.J.* 187, 189–90, 447 *A.2d* 537 (1982) (dismissing appeal of fugitive over objection raised concerning importance of issue); *State v. Ackerson*, 25 *N.J.L.* 209, 211 (Sup.Ct.1855) (equating fugitive status with contempt that negates defendant's entitlement to consideration by judiciary).

motion court's basis for deciding to suppress the evidence found in the automobile. In particular, defendant first asserted that the officer's questioning of Baum amounted to a custodial interrogation during which she was not advised of her *Miranda* rights. He further argued that even if the questioning did not meet that test, it was unduly prolonged and coercive, with the result that it overcame her will and elicited from her an involuntary confession.

The most direct answer to the question that we posed in our request for supplemental briefs is that we have not and we do not today accord standing to a third party, like defendant, to vicariously assert that another's right against self-incrimination has been violated. Regardless of whether the question is analyzed in terms of Fifth Amendment jurisprudence, or seen in light of the state-based counterpart found in our common law, *see State v. Brown*, 190 *N.J.* 144, 153, 919 *A.*2d 107 (2007) (observing that our Constitution does not include a provision that mirrors the Fifth Amendment; recognizing its deep roots in our common law, and codification in statute and evidence rule (quoting *State v. Muhammad*, 182 *N.J.* 551, 567, 868 *A.*2d 302 (2005))), the result is the same.

The Fifth Amendment affords individuals the right to be free from self-incrimination; the United States Supreme Court has never interpreted it to create a broader right that would extend that protection to a third party. Rather, that Court has long held that "the privilege against compulsory self-incrimination should be 'limited to its historic function of protecting only the natural individual from compulsory incrimination through his own testimony or personal records.'" *Bellis v. United States*, 417 *U.S.* 85, 89–90, 94 *S.Ct.* 2179, 2184, 40 *L.Ed.*2d 678, 684 (1974) (quoting *United States v. White*, 322 *U.S.* 694, 701, 64 *S.Ct.* 1248, 1252, 88 *L.Ed.* 1542, 1547 (1944)). As the Court noted in *Bellis*, not only is it true that "the Fifth Amendment privilege is a purely personal *one*," but the Court regards this to be a "fundamental policy limiting the scope of the privilege." *Id.* at 90, 94 *S.Ct.* at 2184, 40 *L.Ed.*2d at 684–85.

This limitation on the Fifth Amendment, as affording an entirely personal right, has been understood among the federal courts to support the conclusion that the Fifth Amendment "cannot be asserted vicariously." [2] *United States v. Fortna,* 796 F.2d 724, 732 (5th Cir.), *cert. denied,* 479 U.S. 950, 107 S.Ct. 437, 93 L.Ed.2d 386 (1986); *see United States v. Ward,* 989 F.2d 1015, 1020 (9th Cir.1992) (concluding that defendant "ha[d] no standing to assert the ... Fifth Amendment rights of others"); *United States v. Richardson,* 1 F.Supp.2d 495, 497 (D.V.I.1998) (recognizing general rule that "defendants do not have standing to raise a third-party's Fifth Amendment violations for their own defense").

Similarly, state courts that have considered whether to permit a vicarious assertion of a claimed Fifth Amendment violation have agreed with the analysis of their federal counterparts. *See, e.g., State v. Ducharme,* 601 A.2d 937, 941 (R.I.1991) ("One may not complain about compulsion that may be applied to another, even though that application may result in the production of evidence that may be used against a defendant."); *State v. Hawkins,* 490 So.2d 594, 598–99 (La.Ct.App.) (holding that defendant did not have standing to allege that statements used to support search warrants were obtained in violation of third party's Fifth Amendment rights), *cert. denied,* 494 So.2d 1174 (La.1986).

---

[2] Some federal courts have theorized that there might be an exception to this rule if police conduct directed toward a co-defendant in violation of the co-defendant's Fifth Amendment right was "so shocking and intentional that ... introduction [of evidence obtained as a result] could deny the defendant a fair trial." *United States v. Richardson,* 1 F.Supp.2d 495, 497 (D.V.I.1998); *see, e.g., United States v. Fortna,* 796 F.2d 724, 732 n. 8 (5th Cir.) (noting that defendant may have standing if third party's statements were derived through "shocking and intentional police misconduct"), *cert. denied,* 479 U.S. 950, 107 S.Ct. 437, 93 L.Ed.2d 386 (1986); *United States v. Chiavola,* 744 F.2d 1271, 1273 (7th Cir.1984) (recognizing exception where evidence is obtained by "extreme coercion or torture"); *Bradford v. Johnson,* 476 F.2d 66, 66 (6th Cir.1973) (holding that defendant's rights were violated by government's "knowing use of coerced testimony obtained by torture, threats and abuse of a witness"). We need not consider recognizing such an exception in this matter because we do not regard the assertions in this record as constituting a "shocking and intentional" violation of Baum's rights.

Although our Constitution does not include language like that found in the Fifth Amendment, a similar privilege is guaranteed by both statute, *N.J.S.A.* 2A:84A–19, and our evidence rules, *N.J.R.E.* 503. In general, our analysis of this protection has been somewhat more expansive than that employed in the federal courts; we have often confronted questions that have compelled us to look beyond the mere recitation of the warnings required by *Miranda* and to consider separately the demands of these long-standing common law principles. *See, e.g., State v. O'Neill,* 193 *N.J.* 148, 176–77, 936 *A.*2d 438 (2007) (considering effectiveness of *Miranda* warnings where incriminating statements had already been elicited); *State v. A.G.D.,* 178 *N.J.* 56, 68, 835 *A.*2d 291 (2003) (recognizing impact of failure to reveal existence of arrest warrant on voluntariness); *cf. State v. Deatore,* 70 *N.J.* 100, 112, 358 *A.*2d 163 (1976) (extending analysis based on right against self-incrimination to question of propriety of cross-examination on post-arrest silence).

As to the narrow issue before this Court, however, an analysis of our own protection against self-incrimination yields the same conclusion as that announced by the courts that have interpreted the Fifth Amendment. As with the *Miranda* warnings, the purpose advanced by our statute and rule is to protect the individual's right against self-incrimination rather than to advance the goals of another who tries to claim the benefit of that purely personal right. Were we to part company with the federal courts on this issue and allow defendant to vicariously assert Baum's right against self-incrimination, we would adopt an approach that would, in effect, read *Miranda* in a manner so inconsistent with the clear guidance of our federal counterparts as to be inappropriate. As we have recognized, the United States Supreme Court "has advised against extending *Miranda* unless the holding 'is in harmony with Miranda's underlying principles.'" *State v. Boretsky,* 186 *N.J.* 271, 278, 894 *A.*2d 659 (2006) (quoting *Fare v. Michael C.,* 442 *U.S.* 707, 717, 99 *S.Ct.* 2560, 2568, 61 *L.Ed.*2d 197, 207 (1979)).

We see no basis in this record on which to expand the protections against self-incrimination so as to permit a third party, such as defendant, to assert a violation vicariously. Therefore, we conclude that, to the extent that defendant's suppression motion was based on a claimed violation of Baum's right against self-incrimination, it should have been denied.

## IV.

Our conclusion that the right against self-incrimination is a personal one, however, does not entirely resolve the issue before the Court. Defendant argues that the Fifth Amendment would only be the correct focus of his challenge if the State were attempting to use Baum's statements against him directly and if, as a result, he sought to suppress those statements.[3] He contends, however, that his motion to suppress was not an effort to attack any statement that Baum made, and therefore urges us to conclude that it was not based on the Fifth Amendment at all.

Instead, defendant argues that his suppression motion was, and is, based on his right to be free from an unreasonable search and seizure as guaranteed by the Fourth Amendment of the United States Constitution and Article I, Paragraph 7 of the New Jersey Constitution. He points out that because he was charged with possession of the contraband that was eventually found in the automobile, he has automatic standing to challenge the search. That is, he asserts that the stop of the vehicle, the continued investigation conducted by the officer, and the eventual search of the vehicle, which uncovered the drugs that are the basis of the criminal charges against him, were unreasonable. He contends that this ground for his suppression motion is entirely separate

---

[3] As defendant correctly points out, Baum's statements would not be admissible in the prosecution of defendant in any event, and a vicarious assertion of her Fifth Amendment right for that purpose would be unnecessary. *See State v. Young*, 46 *N.J.* 152, 156, 215 A.2d 352 (1965) (holding that it is "beyond dispute" that out-of-court statement of co-defendant is inadmissible against another defendant based on hearsay and confrontation rights).

from the statements Baum made or any violation of her rights against self-incrimination.

The State responds with two alternative arguments, either of which would require that we conclude that the search was permissible. First, the State asserts that the alleged Fifth Amendment violation was so inextricably intertwined in the continuing investigation by the officer that defendant cannot challenge the search or the fruits thereof except by an attack on the circumstances that led to Baum's statements. Second, the State asserts that even if this Court only analyzes the challenge to the search of the vehicle through the Fourth Amendment and Article I, Paragraph 7, as to which defendant concededly has standing, the Appellate Division's analysis is unassailable and its judgment that the suppression motion should have been denied must be affirmed.

We address these arguments in turn. Our analysis of the question before the Court in this appeal is informed by our recent decisions addressing the applicable principles governing warrantless searches of automobiles, *see State v. Pena–Flores*, 198 *N.J.* 6, 28–30, 965 *A.*2d 114 (2009), and standing to challenge warrantless searches generally, *see State v. Johnson*, 193 *N.J.* 528, 541–46, 940 *A.*2d 1185 (2008). The reasoning and the historical underpinnings of the doctrines that are expressed in those decisions are thorough and, although each of these decisions is relevant to our analysis, we need not recite their essential principles here.

Rather, we note that, as we held in *Johnson*, both the Fourth Amendment and Article I, Paragraph 7 of the New Jersey Constitution guarantee "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." *Id.* at 541, 940 *A.*2d 1185 (quoting *U.S. Const.* amend. IV and *N.J. Const.* art. I, ¶ 7). When circumstances have warranted it, we have construed Article I, Paragraph 7 so as to give our citizens greater protection against unreasonable searches and seizures than the rights as analyzed under the Federal Constitution, *see, e.g., State v. Eckel*, 185 *N.J.* 523, 538, 888 *A.*2d 1266 (2006) (noting that "we have not hesitated in the

past to afford our citizens greater protection against unreasonable searches and seizures under Article I, Paragraph 7 than would be the case under its federal counterpart"); *State v. Carty,* 170 *N.J.* 632, 639, 790 *A.*2d 903 (2002) (acknowledging that "consent searches under the New Jersey Constitution are afforded a higher level of scrutiny"); *State v. Johnson,* 68 *N.J.* 349, 353–54, 346 *A.*2d 66 (1975) (interpreting Article I, Paragraph 7 to give individuals greater protection than is provided by Fourth Amendment), and it is in our rules governing standing that the different path we have followed is most plain.

 There is no question that defendant has standing to argue that the search of the vehicle that led to the discovery of the contraband and the charge that he possessed it was unreasonable. Our longstanding jurisprudence accords a defendant automatic standing to move to suppress evidence derived from a claimed unreasonable search or seizure "if he has a proprietary, possessory or participatory interest in either the place searched or the property seized." *State v. Alston,* 88 *N.J.* 211, 228, 440 *A.*2d 1311 (1981). We have explained this to mean as well that a defendant has standing if he "is charged with an offense in which possession of the seized evidence at the time of the contested search is an essential element of guilt." *Ibid.*

It follows that because defendant was charged with a possessory offense, if his challenge is solely to the search of the automobile, he has automatic standing to move to suppress the drugs found in that vehicle. It was in this context that the motion court and the Appellate Division should have considered the arguments. Instead, it appears that the motion court, without recognizing that there was an impermissible, embedded challenge to the questioning of Baum, made its findings, and its decision, on that basis. As a consequence, the Appellate Division also did not consider whether the order suppressing the evidence could be sustained, absent the motion court's finding that the questioning of Baum was coercive.

Although the statements made by Baum led to the discovery of the drugs, we must separate her words from the claim as to which defendant has standing. That they are intertwined cannot be avoided; that the motion court found that the questioning of Baum was coercive and amounted to a custodial interrogation certainly complicates our effort to address the question independent of that inappropriate underpinning. Nonetheless, viewing the facts relating to the initial stop of the vehicle and the continuing encounter in accordance with the framework of the issues and the considerations as to which defendant has automatic standing, and apart from the arguments about Baum's constitutional rights, we agree with the Appellate Division that the motion court erred in its analysis and application of the appropriate legal principles.[4]

 Viewing the facts as they unfolded through the lens of the Fourth Amendment and Article I, Paragraph 7, we conclude, as did the Appellate Division, that the motion to suppress should have been denied. Applying our usual rules governing automobile stops to these facts, we begin with the recognition that the detention, even if brief, qualifies as a "seizure" of "persons" within the meaning of the Fourth Amendment. *State v. Dickey,* 152 *N.J.* 468, 475, 706 *A.*2d 180 (1998) (quoting *Whren v. United States,* 517 *U.S.* 806, 809–10, 116 *S.Ct.* 1769, 1772, 135 *L.Ed.*2d 89, 95 (1996)). "Therefore, any automobile stop, however brief, must satisfy the Fourth Amendment's basic requirement of 'reasonableness.'" *State v. Hickman,* 335 *N.J.Super.* 623, 634, 763 *A.*2d 330 (App.Div. 2000) (quoting *Dickey, supra,* 152 *N.J.* at 475, 706 *A.*2d 180).

---

[4] We need not address the separately raised argument to the effect that the Appellate Division overstepped its bounds in undertaking its independent review of the videotape of the stop and the investigation of Baum and of defendant. *See State v. Elders,* 192 *N.J.* 224, 244, 927 *A.*2d 1250 (2007) (noting that availability of videotape does not extinguish deference owed to trial court). We are satisfied that the panel's review of that videotape was not intended to and did not lead it to substitute its view of the facts for that of the motion judge. Instead, its review assisted it in its evaluation of the motion court's application of legal principles to the essentially undisputed facts it had recited.

Here, the initial stop of the automobile was justified by the absence of a required inspection sticker. The officer's request to see Baum's license, along with the other documents relevant to the inquiry about the automobile, was entirely permissible. So, too, were his rather routine questions to both Baum and defendant as to their route of travel and their purpose. In this encounter, the officer quickly learned that the driver could not produce her driver's license or the other credentials relating to the automobile. He also learned in the earliest moments of the stop that she could not identify the owner of the vehicle, referring to defendant as having that information. His routine questions to defendant, which were designed to identify who owned the vehicle, did not yield that information either, as defendant equivocated about just who that might be.

More to the point, in response to simple and straight-forward questions about their travel during the day, the officer was given directly contrary, mutually exclusive explanations from the driver and defendant. These circumstances supported the continued inquiries by the officer, *see Dickey, supra,* 152 *N.J.* at 479–80, 706 *A.*2d 180; *Hickman, supra,* 335 *N.J.Super.* at 637–38, 763 *A.*2d 330, and his suspicions about the possibility of some illegal activity beyond Baum's licensing and the inspection status of the vehicle were justifiably aroused. As we have held, when the reasonable inquiries by the officer related to the circumstances that justified the stop " 'give rise to suspicions unrelated to the traffic offense, an officer may broaden [the] inquiry and satisfy those suspicions.' " *Dickey, supra,* 152 *N.J.* at 479–80, 706 *A.*2d 180 (alteration in original) (quoting *United States v. Johnson,* 58 *F.*3d 356, 357–58 (8th Cir.), *cert. denied,* 516 *U.S.* 936, 116 *S.Ct.* 348, 133 *L.Ed.*2d 245 (1995)). At that point, the officer may give voice to his suspicions in an effort to dispel them if that technique is most likely to be effective. *See id.* at 477, 706 *A.*2d 180; *State v. Davis,* 104 *N.J.* 490, 504, 517 *A.*2d 859 (1986) (framing inquiry as to whether officer used techniques that would both be least intrusive and be effective in shortest time).

 Although a continued detention may amount to an arrest if it is longer than needed or if it becomes "more than 'minimally intrusive,'" *see Dickey, supra,* 152 *N.J.* at 478, 706 *A.*2d 180, the entire encounter here was relatively brief. Moreover, it is undisputed that the only reason for its continuation, apart from the unresponsive and conflicting answers the participants were giving to the officer, was the unusually busy radio traffic that impeded a prompt response to the officer's inquiry about whether Baum had a valid driver's license. All parties agree that, in total, the encounter lasted approximately twenty-six minutes, and we see nothing excessive about that length of time.

 Moreover, during the stop and the officer's investigation, defendant remained seated inside the vehicle; it was Baum who was standing outside of, and at the rear of, the vehicle. As to Baum, there is no question that removing her from the vehicle that had been lawfully stopped is permitted. *State v. Smith,* 134 *N.J.* 599, 611, 637 *A.*2d 158 (1994); *see Pena–Flores, supra,* 198 *N.J.* at 31 n. 7, 965 *A.*2d 114 (describing right of officer to remove driver from lawfully stopped vehicle as "established precedent"). Regardless of whether the driver was inside or at the rear of the vehicle, however, there is nothing in this record that suggests any unreasonable or intrusive investigatory technique focused on defendant. We concur with the conclusion of the appellate panel that there is nothing "unreasonably extended, or . . . more intrusive than necessary" in this stop and in this investigation. *Baum, supra,* 393 *N.J.Super.* at 289, 923 *A.*2d 276.

We recognize that defendant asserts that the questioning of Baum, and in particular the officer's tone and his reference to the drug-sniffing dog,[5] make the subsequent search of the vehicle

---

[5] We decline the invitation to consider whether the reference to the dog was so unduly coercive as to be constitutionally infirm. By the time the officer said that he could have a dog brought to the scene, he had discovered that Baum did not have a valid license and Baum had already admitted that some of her earlier responses were false and that they had been involved in illegal use of narcotics

constitutionally infirm. We, however, cannot overlook the fact that this is in reality an argument relating to the self-incrimination claim, as to which defendant lacks standing. Nor can we escape the fact that much of the motion court's analysis and factual findings were driven by the court's focus on the interrogation of Baum and its conclusion that her rights to be free from self-incrimination had been violated. Those views, as we have explained, arise from rights that defendant had no standing to assert. Viewing the totality of the circumstances of the encounter solely through the prism of those that are defendant's to raise about the constitutionality of the search, we agree with the appellate panel's conclusion that the search was not unreasonable and that the motion to suppress should have been denied.

## V.

We affirm, as modified, the judgment of the Appellate Division, reversing the grant of the motion to suppress and remanding the matter for further proceedings.

Justice WALLACE, JR., dissenting.

The majority concludes that any asserted Fifth Amendment violation was personal to codefendant Baum, and therefore defendant Moore lacks standing to raise the issue as part of his Fourth Amendment claim of an unreasonable search and seizure. I respectfully dissent.

As a preliminary matter, there may be some question whether the issue of defendant's standing to challenge the search is properly before the Court. The standing issue was not raised before the trial court or the Appellate Division and it was not discussed by the State in its brief to the Supreme Court. We faced the same issue in a Fourth Amendment case, in which we concluded that because the standing issue "raises important ques-

---

earlier in the day. On this record and in light of defendant's lack of standing, we need not address this argument.

tions in the administration of criminal justice in this state," we should address the issue. *State v. Alston,* 88 *N.J.* 211, 219, 440 *A.*2d 1311 (1981). For that same reason, I agree that we should address this issue.

It may be that the standing issue was not raised below because, in light of this Court's rule of automatic standing for possessory offenses adopted in *Alston,* the parties and the courts did not consider that standing was an issue. *See id.* at 228, 440 *A.*2d 1311. In *Alston* this Court traced the federal law on standing and noted that in cases in which an essential element of the crime charged is possession of the seized property at the time of the contested search, the United States Supreme Court abandoned the "automatic standing" rule previously adopted in *Jones v. United States,* 362 *U.S.* 257, 263, 80 *S.Ct.* 725, 732, 4 *L.Ed.*2d 697, 703 (1960). *Id.* at 221–24, 440 *A.*2d 1311. The *Alston* Court noted that under the federal search and seizure law, "standing to challenge the prosecutorial use of evidence obtained in violation of the Fourth Amendment is not enjoyed by a mere passenger in a searched automobile even if he alleges ownership of the property seized." *Id.* at 224, 440 *A.*2d 1311. However, this Court parted company with that view of standing and "construe[d] Article I, paragraph 7 of our State Constitution to afford greater protection." *Id.* at 226, 440 *A.*2d 1311. The Court held that "a criminal defendant is entitled to bring a motion to suppress evidence obtained in an unlawful search and seizure if he has a proprietary, possessory or participatory interest in either the place searched or the property seized." *Id.* at 228, 440 *A.*2d 1311. Further, this Court made it clear that

when the charge against defendant includes an allegation of a possessory interest in property seized such as would confer standing, under the traditional test we retain today, to object to prosecutorial use of evidence obtained in an unlawful search and seizure, the defendant has automatic standing to bring a suppression motion under *R.* 3:5–7, as "a person claiming to be aggrieved by an unlawful search and seizure and having reasonable grounds to believe that the evidence attained may be used against him in a penal proceeding."

[*Id.* at 228–29, 440 *A.*2d 1311 (quoting *R.* 3:5–7(a)).]

Recently this Court reviewed our standing jurisprudence in *State v. Johnson,* 193 *N.J.* 528, 544–46, 940 *A.*2d 1185 (2008). The

Court explained that "[f]ollowing *Alston*, our courts have consistently applied the automatic standing rule to defendants charged with possessory offenses, regardless of whether they had an expectation of privacy in the area searched." *Id.* at 545, 940 *A.*2d 1185; *see also State v. Smith*, 155 *N.J.* 83, 102, 713 *A.*2d 1033 (1998); *State v. Clausell*, 121 *N.J.* 298, 325–26, 580 *A.*2d 221 (1990); *State v. Cleveland*, 371 *N.J.Super.* 286, 295–96, 852 *A.*2d 1150 (App.Div.), *certif. denied*, 182 *N.J.* 148, 862 *A.*2d 57 (2004); *State v. Arthur*, 287 *N.J.Super.* 147, 154–55, 670 *A.*2d 592 (App. Div.), *rev'd on other grounds by* 149 *N.J.* 1, 12–13, 691 *A.*2d 808 (1997); *State v. Mollica*, 114 *N.J.* 329, 340, 554 *A.*2d 1315 (1989); *State v. Saunders*, 75 *N.J.* 200, 208–09, 381 *A.*2d 333 (1977).

To be sure, this Court has noted that a defendant generally may assert only his or her constitutional rights. *Saunders, supra,* 75 *N.J.* at 208–09, 381 *A.*2d 333. Despite that, when appropriate, this Court has concluded that "when the party raising the claim 'is not simply an interloper and the proceeding serves the public interest, standing will be found.'" *Clausell, supra,* 121 *N.J.* at 324, 580 *A.*2d 221 (quoting *In re Quinlan*, 70 *N.J.* 10, 34–35, 355 *A.*2d 647 (1976)).

In *Saunders, supra,* the defendant and the accomplice were indicted for rape and related charges. 75 *N.J.* at 203, 381 *A.*2d 333. At trial, the defendant asserted that the two complainants consented to sexual intercourse in exchange for drugs. *Ibid.* The trial court, over the defendant's objection, charged fornication as a lesser included offense. *Ibid.* The jury found the defendant not guilty of the charges in the indictment, but guilty of fornication. *Ibid.* The defendant moved for acquittal, contending the fornication statute was unconstitutional. *Ibid.* That motion was denied, and defendant's challenge before the Appellate Division was rejected. *Ibid.* This Court granted certification and reversed, addressing first the State's argument that the defendant lacked standing based on the "general principle that a litigant as to whom application of a statute would be constitutional lacks standing to attack the statute by asserting the constitutional rights of others."

*Id.* at 208, 381 *A.*2d 333. After noting that the rule of standing generally "limits a criminal defendant to constitutional claims related to his own conduct," *ibid.,* this Court stated:

> We think it would be inappropriate to refuse to review the constitutionality of *N.J.S.A.* 2A:110–1 on the fortuitous ground that the defendant's act may have constituted a violation of other criminal statutes such as public or private lewdness. We therefore conclude that the salutary purposes of the usual rules of standing should not operate in these circumstances to prevent defendant from challenging *N.J.S.A.* 2A:110–1 as unconstitutional on its face.
>
> [*Id.* at 209–10, 381 *A.*2d 333.]

In *Mollica, supra,* this Court faced the issue of whether one of the defendants, Primo Mollica, had standing to challenge the seizure of telephone toll records from another individual's hotel room. 114 *N.J.* at 337, 554 *A.*2d 1315. The State argued that Mollica was limited to contesting the seizure of items from his hotel room, but that he lacked standing to challenge the prior warrantless seizure of the hotel telephone toll records from the codefendant's room. *Ibid.* This Court noted that as a matter of state constitutional doctrine, New Jersey applies a broad standard in standing issues, " 'namely, that a criminal defendant is entitled to bring a motion to suppress evidence obtained in an unlawful search and seizure if he has a proprietary, possessory or participatory interest in either the place searched or the property seized.' " *Id.* at 339, 554 *A.*2d 1315 (quoting *Alston, supra,* 88 *N.J.* at 228, 440 *A.*2d 1311). The Court then declared that there was a "sufficient connection between the telephone toll records and the underlying criminal gambling . . . and a sufficient relationship between the defendant and the gambling enterprise, to establish a participatory interest on the part of defendant in this evidence" for the defendant to have standing to challenge the validity of the seizures of the toll records. *Id.* at 340, 554 *A.*2d 1315.

As I understand the majority opinion, despite the clear proprietary, possessory, or participatory interest that a defendant may have in property seized, if a coerced statement of a codefendant resulted in the police receiving information to support a warrantless search, the defendant may not raise that constitutional violation as part of his or her challenge to the search. In my view, our

automatic standing rule should allow a passenger in a vehicle to challenge a search of the vehicle when there is an allegation that the driver's Fifth Amendment rights were violated and that such violation led to the search of the vehicle. Unfortunately, the majority opinion will now lead to the result that the driver of a vehicle (in this case, codefendant) may challenge the search of the vehicle for the violation of his or her Fifth Amendment rights, but the passenger (in this case, defendant) may not make that same challenge because the Fifth Amendment challenge is personal to another person.

In the present case the circumstances overwhelmingly cry out for the Court to extend standing to defendant to raise the asserted violations of codefendant's Fifth Amendment rights. Defendant obviously is not an interloper and has a proprietary, possessory, or participatory interest in the property seized. Both defendant and codefendant claimed that the search of the vehicle and the resulting seizure of contraband were fruits of the illegal detention of codefendant that resulted in her involuntary statements to the police. Specifically, both defendants argued that the police officer's questioning of codefendant was overly invasive, unrelated to the purpose of the stop, and lasted longer than necessary to effectuate the purpose of the stop, resulting in a violation of both defendants' Fourth Amendment rights to be free from unreasonable searches and seizures. Further, defendant argued that codefendant's Fifth Amendment rights were violated because she was in custody and subject to custodial interrogation without the benefit of *Miranda*[1] warnings. The trial court agreed. Based on that finding, the violation of codefendant's constitutional rights directly affected defendant to his detriment.

I conclude that defendant has a sufficient connection to the asserted coerced statements from codefendant such that the usual rules of standing should not deprive him of the right to challenge

---

[1] *Miranda v. Arizona,* 384 *U.S.* 436, 473, 86 *S.Ct.* 1602, 1627, 16 *L.Ed.*2d 694, 723 (1966).

the search based on the claimed violation of codefendant's constitutional rights. Under the circumstances here, the Fifth Amendment and the Fourth Amendment challenges are so inextricably bound together that defendant has standing to challenge the search both on his Fourth Amendment right to be free from unreasonable seizures, and on codefendant's Fifth Amendment right to be free from custodial interrogation that is both coercive and without the benefit of *Miranda* warnings. I find no justification to parse the standing issue to allow one defendant to raise the constitutional violation but not the other.

Because I conclude that defendant has standing to challenge the search and seizure, and because there was sufficient credible evidence for the trial court to find that the questioning of codefendant was coercive and not preceded by *Miranda* warnings, I find no basis to interfere with the trial court's judgment to suppress the evidence.

Justice LONG joins in this opinion.

*For affirmance as modified/remandment*—Chief Justice RABNER and Justices LaVECCHIA, ALBIN, RIVERA–SOTO and HOENS—5.

*For reversal*—Justices LONG and WALLACE—2.