65 A.3d 836

EWA FIK–RYMARKIEWICZ, PLAINTIFF–APPELLANT, v. UNIVERSITY OF MEDICINE AND DENTISTRY OF NEW JERSEY, RAMESHWAR SHARMA, AND TERESA DUDA, DEFENDANTS–RESPONDENTS.

Superior Court of New Jersey
Appellate Division

Argued January 22, 2013—Decided February 7, 2013.

470

Before Judges PARRILLO, FASCIALE and MAVEN.

*George R. Szymanski* argued the cause for appellant.

*Noreen P. Kemether*, Deputy Attorney General, argued the cause for respondent University of Medicine and Dentistry of New Jersey (*Jeffrey S. Chiesa*, Attorney General, attorney; *Lewis A. Scheindlin*, Assistant Attorney General, of counsel; *Ms. Kemether*, on the brief).

*William P. Flahive* argued the cause for respondent Rameshwar Sharma.

*Michael A. Armstrong and Associates, L.L.C.*, attorneys for respondent Teresa Duda, join in the brief of respondent Rameshwar Sharma.

The opinion of the court was delivered by

FASCIALE, J.A.D.

Plaintiff Ewa Fik–Rymarkiewicz, Ph.D., a molecular biologist, appeals from a June 10, 2011 order dismissing her complaint with prejudice, and a July 22, 2011 order denying reconsideration.[1] We are thoroughly satisfied that plaintiff demonstrated contumacious behavior, ignored court orders, and obstructed discovery of information that is directly relevant to her primary emotional distress claim. We conclude, therefore, that the judge did not abuse her discretion, and affirm the dismissal.

In October 2006, plaintiff filed a complaint against her former employer, defendant University of Medicine and Dentistry of New Jersey (UMDNJ), and supervisors Rameshwar Sharma, Ph.D., and Dr. Duda. She alleged employment discrimination, hostile work environment, and retaliation in violation of the New Jersey Law Against Discrimination (the LAD), *N.J.S.A.* 10:5–1 to –49.[2]

---

[1] Plaintiff also appeals from (1) a January 8, 2010 order denying her motion for partial summary judgment on liability, granting summary judgment to all defendants dismissing her claims for fraud and conversion, and dismissing all claims against defendant Teresa Duda, Ph.D.; (2) a February 8, 2010 amended order dismissing all claims against Dr. Duda with prejudice; (3) an April 8, 2010 order dismissing the complaint without prejudice; (4) a September 8, 2010 order conditionally permitting reinstatement of the complaint subject to the production of discovery; and (5) that part of the June 10, 2011 order denying her motion to reinstate her complaint.

[2] She also asserted claims for vicarious liability, intentional infliction of emotional distress, defamation, violation of public policy, fraud and conversion, violation of the New Jersey Family Leave Act (FLA), *N.J.S.A.* 34:11B–1 to –16, and conspiracy.

Plaintiff alleged the following facts in her complaint, most of which defendants disputed.

In 2000, UMDNJ employed plaintiff as a post-doctoral fellow, and she received positive evaluations for approximately five years. In January 2005, plaintiff notified Drs. Sharma and Duda that she was pregnant and they began to harass and discriminate against her. For example, in April 2005, plaintiff discovered that Drs. Sharma and Duda published an article without recognizing her work effort, and when plaintiff questioned them about the article, Drs. Sharma and Duda threatened to terminate her if she complained publicly; and, in May 2005, Dr. Duda criticized plaintiff's work as being too slow, and pressured her that work-related stress could cause a premature birth.

After giving birth, plaintiff remained home pursuant to UMDNJ's medical leave policy. When she returned to work in October 2005, Dr. Sharma allegedly told her that "[y]ou cannot be a mommy and a scientist at the same time." In October 2005, plaintiff suffered from anxiety, depression, and marital problems. In January 2006, plaintiff filed an internal discrimination complaint with UMDNJ's Office of Affirmative Action/EEO, and in September 2006, UMDNJ terminated her. She found new employment five months later. Plaintiff sought compensatory and punitive damages for her emotional distress, and asserted a lost wage claim.[3]

## I.

Defense counsel deposed plaintiff on four separate days between August 2008 and April 2010. At her first deposition, plaintiff appeared with a folder that she had not produced in discovery containing notes that she had made "after every accusation" by

---

[3] Plaintiff dropped her future lost wage claim during her third day of deposition testimony. In that proceeding, plaintiff's counsel stated, however, that "we're still pursuing her claim for economic losses" up to the time when plaintiff found new employment, five months after UMDNJ terminated her.

Drs. Sharma and Duda, and she attempted to consult those notes during the proceeding. After an off-the-record conversation with her counsel, plaintiff produced the notes and the deposition continued, but the proceeding was interrupted by other off-the-record consultations between plaintiff and her counsel.[4] The parties were unable to complete the deposition.

In March 2009, plaintiff appeared for her second deposition and expressed an unwillingness to answer questions and provide discovery. For example, regarding her immigration status, she testified that she applied for a green card as an independent researcher, but refused to give to defense counsel the name of her immigration attorney. Plaintiff's counsel stated, "I'm leaving the ultimate decision as to whether she's going to provide the information up to her. I've explained the risks and ramifications of her not responding to your question." Defense counsel then informed plaintiff that he could move to dismiss the case if she failed to answer his questions.

Plaintiff's third deposition occurred in February 2010. At this deposition, plaintiff again refused to provide the name of her immigration attorney, refused to answer other questions, and attempted to control the proceeding. Plaintiff announced that she would "answer only questions which are related to the time I was working for Dr. Sharma and UMDNJ." For example,

Q: Who do you work for now?

. . . .

A: I'll not answer the question [because it is] not related [to my employment] with UMDNJ. . . .

Q; [To plaintiff's counsel:] are you instructing your client not to answer this question?

. . . .

A: [From plaintiff's counsel:] It's up to her.

. . . .

---

[4] During the deposition, Dr. Sharma's counsel reminded plaintiff's counsel about *Rule* 4:14–3(f) (regarding the limitations placed on communication between a deponent and counsel once a deposition commences).

Q: What is your annual salary with your present employer?

A: I'll not answer that question.

. . . .

A: And I will not answer any other questions which are not related to ... [UMDNJ]. *And that's final.*

Q: [Y]ou will not answer my questions about what current benefits you have in your present job?

A: I don't think it's related to the case.

[ (Emphasis added).]

During the deposition, defense counsel advised plaintiff to answer the questions unless otherwise instructed by her counsel, and repeated his warning that he would move to dismiss her complaint if she refused to cooperate. Then the questions turned to plaintiff's tax records, defendant's notice to produce, and her continued unwillingness to provide discovery.

Q: Did you bring copies of your tax returns today?

A: No.

. . . .

Q: You were asked [at your second deposition] to bring tax returns for the years 2004 to 2007. Did you produce those tax returns in this case?

A: [N]o. . . . I will not provide [to] you my tax returns.

. . . .

The questions next switched to plaintiff's curriculum vitae and her refusal to provide certain additional discovery.

Q: [A]re there any publications that you have authored since the time [you issued your CV]?

. . . .

A: I told you [that] I'll not answer the questions regarding my private life which is not related with the time I have been working with Dr. Sharma.

At this third deposition, defense counsel stated that he served a notice to produce the tax returns, explained that plaintiff refused to provide discovery, and asked plaintiff's counsel if he would be filing a protective order. Plaintiff's counsel maintained that "we object to the request for the income tax records." At the end of the third deposition, however, plaintiff's counsel said that "we're open minded about ... the tax records, if we can find them, and we'll think about continuing with the deposition." With that, the deposition ended.

In March 2010, the parties appeared before the judge and participated in a conference to resolve plaintiff's unwillingness to answer questions. The judge stated that

[T]he thrust of [plaintiff's] claim is for the emotional harm that she suffered as a result of the alleged statements by Dr. Sharma. In that regard[,] *I'm going to allow a full exploration of all aspects of the emotional harm that is claimed and I don't mean that in a narrow sense.* . . .

[ (Emphasis added).]

The judge then selected the date of March 29, 2010 to complete plaintiff's deposition. Thereafter, plaintiff's counsel cancelled the deposition due to plaintiff's busy schedule and then the parties engaged in motion practice.

Plaintiff filed a motion for reconsideration of the judge's order [5] that plaintiff's deposition be continued, and Dr. Sharma moved to dismiss the complaint without prejudice pursuant to *Rule* 4:23–5 (failure to make discovery), *Rule* 4:23–4 (failure to attend deposition), and *Rule* 1:2–4(a) (sanctions for failure to appear). On April 5, 2010, the judge conducted oral argument and stated that

[W]ith respect to [plaintiff's] motion to reconsider the requirement that she [be] deposed, I find that [you have not brought] to my attention anything new. . . .

. . . .

I find that there were issues that remained outstanding from those prior deposition sessions. Those issues had not been addressed. . . .

[Y]our client, in the end, made the decision that she was simply going to disobey the order of this [c]ourt.

. . . .

[Plaintiff failed to appear for her deposition on March 29, 2010, and] it was utterly unreasonable to expect others to essentially dance around her schedule and to move forward with depositions on some other day, a non-work day.[6]

. . . .

I conclude that [plaintiff] made a decision in this case. [She decided] not to make discovery [which this court ordered]. . . .

. . . .

Under *Rule* 4:23–5(a)(1), the plaintiff's complaint is dismissed without prejudice.

. . . .

---

[5] The judge issued the order verbally.

[6] Plaintiff suggested that her deposition occur on a Saturday.

I'm going to require that this deposition, if you're to reschedule it, be rescheduled within a two week period as a condition of this reinstatement.

On April 8, 2010, the judge entered the order dismissing the complaint without prejudice.

Plaintiff's fourth deposition occurred on April 15, 2010. At this proceeding, plaintiff testified for the first time that she shredded her 2004, 2005, 2006, and 2007 tax returns. Plaintiff indicated that she did not shred her 2008 tax returns, but she refused to produce them because "2008 doesn't apply to the time I was working in Dr. Sharma's lab." Plaintiff also refused to produce her 2009 tax returns for the same reason. Plaintiff was adamant that even if the records existed, "I will never produce my tax returns for you." The questioning continued

Q: Will you fill out [Form 4506T–EZ—thereby allowing defense counsel to obtain your tax returns directly from the IRS]?

A: No.

. . . .

Q: Have you published anything since [you issued your] CV?

A: Yes.

. . . .

Q: Tell me what you published, and where it was published?

. . . .

A: I'm not telling you what I have published.

Plaintiff then testified that Dr. Sharma "is the only one" who caused her emotional harm, and that she had no other stress points in her life. Defense counsel probed into her statement that Dr. Sharma was solely responsible for her emotional stress claim, but she continued to obstruct the discovery of relevant information.

Q: Did you ever have any concerns about your immigration status that caused you any stress?

A: No.

Q: Did you ever have any concerns about your husband's immigration status that caused you any stress?

A: Well, my husband is my dependent. So, if I am safe, he is safe, too.

Q: Okay.

A: The only thing that I was worrying about is if I lose [my] job in Dr. Sharma's lab, . . . I have to go back to my country . . . if I don't find a job.

. . . .

A:  I never got any cancellation letter of my [v]isa ... and [I showed papers to lawyers, and] they were valid.

. . . .

Q:  Will you give me th[e] name [of the immigration lawyer]?

A:  No, I'm not going to give you that name....

In May 2010, plaintiff moved to reinstate her complaint believing that she produced fully responsive discovery, and defendants moved to dismiss the complaint with prejudice. Plaintiff argued, in part, that her tax returns are irrelevant "as the plaintiff withdrew *most* of [plaintiff's] lost wage claim." (Emphasis added). At oral argument in August 2010, the judge stated that

> The [c]ourt previously hear[d] motion practice [regarding the production of tax records,] and ... plaintiff unilaterally ... refus[ed] to comply with the order of the [c]ourt....
>
> . . . .
>
> She refused to answer [the] question[s] about [recent publications].
>
> The [c]ourt finds that there is no adequate basis for that refusal. She also refused to provide the name of her immigration attorney.... [T]he name of one's attorney is not something that is necessarily privileged.
>
> . . . .
>
> [T]o the extent that ... plaintiff ... may have been confused ... the [c]ourt will provide [thirty additional] days to supply [the outstanding discovery].

As a result, on September 8, 2010, the judge denied defendant's motion to dismiss the complaint with prejudice and ordered that plaintiff's complaint may be reinstated if she produced by October 8, 2010 (1) documents pertaining to her publications; (2) tax returns for years 2005–2008; [7] and (3) the name of her immigration attorney.

On October 8, 2010, plaintiff's counsel produced her W–2 forms from 2005 to 2008, and he represented to defense counsel that plaintiff does not have her federal tax returns. On October 12, 2010, defendant's counsel renewed his request that plaintiff sign

---

[7] Thus, the judge rejected her argument that the tax returns were irrelevant to her emotional distress claim, as he previously had determined that "I'm going to allow a full exploration of all aspects of the emotional harm that is claimed and I don't mean that in a narrow sense."

IRS authorizations so that he could obtain the records directly from the government. On October 29, 2010, plaintiff's counsel stated that he himself would use the authorizations and obtain the records. In November 2010, defense counsel objected and repeated his request for signed authorizations from plaintiff, and in May 2011, defense counsel again requested the authorizations, which plaintiff ignored.

Finally, on February 4, 2011, plaintiff's counsel produced her 2005, 2006, 2007, and 2008 federal tax returns, but she unilaterally redacted them. She did not seek a protective order, as defense counsel had inquired about during plaintiff's third deposition. Plaintiff also removed certain schedules that were referenced in the tax records, but she provided no reason for that alteration. On February 23, 2011, plaintiff's counsel wrote defense counsel and explained that the redacted portions of the tax returns pertained to plaintiff's husband, but there was no mention of the schedules that plaintiff removed.

Believing that she produced fully responsive discovery to the document demands, plaintiff then moved to reinstate her complaint in May 2011. Defendants, however, cross-moved, and repeated their request that the judge dismiss the complaint with prejudice. The motions were assigned to a different judge than the one who had been managing the case up to this point. The new judge thoroughly reviewed the file, conducted oral argument, and entered the June 10, 2011 order dismissing plaintiff's complaint with prejudice and denying her motion to reinstate. In her lengthy and comprehensive oral opinion she stated that

> The plaintiff has exhibited a history of refusing to produce [the] required discovery.... She has chosen to ignore [c]ourt orders by producing incomplete tax records....
>
> ....
>
> She has ignored [c]ourt orders in the past, and by doing so, she has caused the litigation to be unnecessarily delayed to the point where the defendants are now harmed by the passage of time.[8] Plaintiff's complaint was dismissed without

---

8 At this point, it was approaching four years after she had filed her complaint.

prejudice more than [thirteen] months ago, and until now, she has not taken the steps necessary to have it reinstated.

Plaintiff is not in comport with *Rule* 4:23–5(a)[,] ... she has not produced the demanded and fully responsive discovery, nor has she demonstrated any exceptional circumstances ... to allow for the reinstatement of her complaint.... [T]he motion for dismissal with prejudice is *required* to be granted unless full and responsive answers have been served by the time of the return date or extraordinary circumstances are demonstrated.

. . . .

Accordingly, given the history of continual and unilateral discovery delay and failure to abide by court orders, and further, given that as of today, the plaintiff is still not in compliance with the discovery and further, that no exceptional circumstances have been [shown], the motion to reinstate the complaint is denied, the motion to dismiss the complaint with prejudice is granted.

[ (Emphasis added).]

Plaintiff moved for reconsideration. She contended that (1) the first judge was better equipped to hear her motion to reinstate the complaint; (2) the cross-motion to dismiss with prejudice was heard impermissibly; and (3) she argued for the first time that the tax returns were properly redacted to protect her and her husband's Fifth Amendment rights, and she maintained that the tax returns were irrelevant. The judge issued an oral decision rejecting these arguments, and then entered the July 22, 2011 order denying reconsideration. This appeal followed.

## II.

On appeal, plaintiff argues that (1) the court abused its discretion by dismissing the complaint without prejudice on April 8, 2010, and then by entering the September 8, 2010 order requiring her to produce discovery as a condition to reinstatement; (2) the judge abused her discretion by dismissing the complaint with prejudice on June 10, 2010, because plaintiff produced fully responsive discovery; (3) the judge committed plain error by "refusing to honor" plaintiff's Fifth Amendment right against self-incrimination; (4) the judge erred by failing to grant plaintiff's motion for partial summary judgment; and (5) the judge erred by granting summary judgment dismissing her claims for fraud and conversion. We focus on plaintiff's contentions that the court

abused its discretion by dismissing the case, without and then with prejudice.

## A.

We begin by addressing plaintiff's argument that the court erred by dismissing her complaint without prejudice. " 'A trial court has inherent discretionary power to impose sanctions for failure to make discovery, subject only to the requirement that they be just and reasonable in the circumstances.' " *Abtrax Pharms., Inc. v. Elkins–Sinn,* 139 *N.J.* 499, 513, 655 *A.*2d 1368 (1995) (quoting *Calabrese v. Trenton State Coll.,* 162 *N.J.Super.* 145, 151–52, 392 *A.*2d 600 (App.Div.1978), *aff'd,* 82 *N.J.* 321, 413 *A.*2d 315 (1980)). Against this standard, we conclude that the judge did not err by dismissing the complaint without prejudice.

Defendants sought to dismiss the complaint without prejudice pursuant to *Rule* 4:23–5(a)(1), *Rule* 4:23–4, and *Rule* 1:2–4. In dismissing the complaint without prejudice, the judge relied on *Rule* 4:23–5(a)(1), which states in part that

> If a demand for discovery pursuant to *R.* 4:18, . . . is not complied with and no timely motion for an extension or a protective order has been made, the party entitled to discovery may, . . . move, on notice, for an order dismissing or suppressing the pleading of the delinquent party. . . . Unless good cause for other relief is shown, the court shall enter an order of dismissal or suppression without prejudice. . . . The delinquent party may move on notice for vacation of the dismissal or suppression order at any time before the entry of an order of dismissal or suppression with prejudice. The motion shall be supported by affidavit reciting that the discovery asserted to have been withheld has been fully and responsively provided. . . .

Here, the judge concluded that "there were issues that remained outstanding from those prior deposition sessions," plaintiff failed "to make discovery,"[9] and cancelled her fourth deposition date selected by the judge. Although plaintiff argues that the judge never entered a written order that the deposition occur on March 29, 2010, plaintiff failed to comply with the oral order to

---

[9] Plaintiff failed to respond to the defense's document demands for tax documents and the name of her immigration attorney.

appear at her continued deposition. Instead, plaintiff moved to reconsider whether a fourth deposition was necessary. She appeared for her fourth deposition after the court dismissed her complaint without prejudice. The fact remains, however, that she had failed to respond to defendant's document demands. For this reason alone, the judge did not err by dismissing the complaint without prejudice pursuant to *Rule* 4:23–5(a)(1).

Furthermore, by compelling plaintiff to produce the three items referenced in the court's September 8, 2010 order (documents pertaining to her publications; tax returns for years 2005–2008; and the name of her immigration attorney), the judge imposed no more than what the rule mandated, requiring plaintiff to produce "fully and responsive" discovery as a condition to reinstatement of the complaint. *R.* 4:23–5(a)(1). In fact, the judge entered the September 2010 order rather than dismissing the complaint with prejudice as defendants had urged vigorously. As a result, the judge imposed sanctions that were neither unjust nor unreasonable. *Abtrax, supra,* 139 *N.J.* at 513, 655 *A.*2d 1368.

## B.

■ Next, plaintiff contends that the judge abused her discretion by dismissing the complaint with prejudice. In dismissing the complaint with prejudice, the judge relied on *Rule* 4:23–5(a)(2), which provides in part that

> If an order of dismissal ... without prejudice has been entered pursuant to paragraph (a)(1) of this rule and not thereafter vacated, the party entitled to the discovery may, ... move on notice for an order of dismissal ... with prejudice.... The motion to dismiss ... with prejudice *shall* be granted unless a motion to vacate the previously entered order of dismissal ... without prejudice has been filed by the delinquent party *and* either the demanded and fully responsive discovery has been provided or exceptional circumstances are demonstrated.
> [ (Emphasis added).]

Although plaintiff asserts that she produced fully responsive discovery, the record demonstrates otherwise. Even though she was warned repeatedly that refusal would result in the dismissal of her case, and that she should obtain a protective order if warranted, plaintiff refused to sign IRS tax authorizations at defendants'

repeated requests, thereby depriving the defense of obtaining unaltered tax records directly from the IRS; produced incomplete tax records that she redacted without a protective order or authorization by the court; and without notice to the court or parties, removed schedules that were referenced in the tax returns. As a result of her deliberate decision to withhold relevant discovery, we conclude that plaintiff failed to produce "fully responsive" discovery as the rule requires. *R.* 4:23–5(a)(2).

This is also not a situation where plaintiff failed to produce discovery on a minor issue in response to court orders. Plaintiff argues that the tax records are irrelevant because she withdrew most, but not all, of her wage claim. The tax returns are relevant not only to the remaining wage claim, but also to plaintiff's primary contention that Dr. Sharma alone caused her emotional distress and marital problems. *Abtrax, supra,* 139 *N.J.* at 514, 655 *A.*2d 1368 (stating that dismissal with prejudice is appropriate where "the order for discovery goes to the very foundation of the cause of action" (internal quotation marks omitted)). Plaintiff testified that her husband was not employed and she refused to tell counsel what her salary was. Defendant sought the tax returns, in part, to verify whether her husband had reported earned income, to confirm if he had been working, and to compare income levels before and after UMDNJ terminated her. He sought the tax records to determine whether money issues contributed to her emotional distress claim. Also, although she testified that her husband was not working, if her tax returns showed otherwise, then this inconsistency would be relevant to impeach her credibility. Thus, we agree with the court that the tax records are relevant to plaintiff's claim of emotional distress because "the information sought appears reasonably calculated to lead to the discovery of admissible evidence." *R.* 4:10–2(a).

Finally, we conclude that plaintiff's "refusal to comply [with the discovery demands]" was "deliberate and contumacious," and that, under the totality of the circumstances of this case, the sanctions

imposed were not unjust or unreasonable. *Abtrax, supra,* 139 *N.J.* at 513–14, 655 *A.*2d 1368.

### C.

We disagree with plaintiff's contention that the judge committed plain error by "refusing to honor" her Fifth Amendment right, "and possibly her husband['s]," against self-incrimination. Plaintiff never asserted her right to be silent in response to any deposition question. Therefore, we focus on plaintiff's decision to ignore repeated requests to file a protective order, and her deliberate, continuous attempts to thwart the discovery process.

We note at the outset that plaintiff raised this argument for the first time during her motion to reconsider the judge's June 10, 2011 order dismissing the complaint with prejudice, where the judge stated

the last argument presented is that the plaintiff properly redacted the [c]ourt ordered tax returns because she was asserting a [F]ifth [A]mendment privilege on the part of both herself and her husband.

[This is] the first time such an argument has been advanced.

Although the judge declined to address the argument because plaintiff raised it for the first time on her reconsideration motion, *see Rosen v. Keeler,* 411 *N.J.Super.* 439, 450, 986 *A.*2d 731 (App.Div.2010) (not disturbing the trial court's refusal to consider arguments first raised in motion for reconsideration), the judge stated that

[t]he privilege against self-incrimination is personal, applying only to individuals. . . . .

[O]ne cannot assert a [F]ifth [A]mendment right on behalf of another. It can only be asserted if testimony might incriminate one's self.

Nevertheless, we focus on plaintiff's calculated decisions to "deliberately pursu[e] a course that thwarts persistent efforts to obtain the necessary facts." *Abtrax, supra,* 139 *N.J.* at 515, 655 *A.*2d 1368.

Plaintiff's self-incrimination argument on reconsideration and on appeal contradicts the position she advanced on February 23, 2011, when plaintiff's counsel informed defense counsel that the

redactions "pertained to [plaintiff's] husband. As he is not a party to this action, any information pertaining to him would be undiscoverable." [10] Plaintiff never asserted *her* Fifth Amendment right to be silent during her depositions. Rather, she ignored the opportunity to seek a protective order or to address any potential privilege issue, even though she had been invited repeatedly to do so and warned that defense counsel would move to dismiss the complaint if she refused to provide discovery. Instead, plaintiff refused to supply the tax records, contending that they were irrelevant. In fact, on appeal, plaintiff's counsel maintains that "any money that [plaintiff's] husband might have earned in the United States [is] irrelevant." We disagree.

### D.

Lastly, we affirm that part of the January 8, 2010 order denying her motion for partial summary judgment because genuine issues of material fact exist, and she is not entitled to judgment as a matter of law. *Brill v. Guardian Life Ins. Co. of Am.*, 142 *N.J.* 520, 540, 666 *A.*2d 146 (1995). In support of her motion, she relied on a report from a manager of UMDNJ's Office Of Administrative Action/EEO. She contended that the manager's report, in response to her discrimination complaint that she filed with the UMDNJ Office of Affirmative Action/EEO, constituted an admission pursuant to *N.J.R.E.* 803(b). We reject that argument because the manager is not a party and is unauthorized by UMDNJ to make a statement concerning plaintiff's LAD case that she filed in superior court. *N.J.R.E.* 803(b).

---

[10] "[T]he United States Supreme Court has never interpreted [the Fifth Amendment] to create a broader right that would extend that protection to a third party." *State v. Baum*, 199 *N.J.* 407, 417, 972 *A.*2d 1127 (2009). As such, "the Fifth Amendment cannot be asserted vicariously." *Id.* at 418, 972 *A.*2d 1127 (internal quotation marks omitted). Plaintiff, therefore, cannot withhold discovery on the basis that her husband's Fifth Amendment rights might be violated.

We have determined that plaintiff's remaining arguments lack sufficient merit to warrant discussion in this written decision. *R.* 2:11–3(e)(1)(E).

Affirmed.