**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-5435-17T3

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

SHAWN PEARSON, a/k/a
QUINZELL ALEXANDER, CLIFTON
ANDREWS, SHAWN DAVIS, and
LASHAWN PETERSON,

     Defendant-Appellant.

_____

Submitted June 18, 2019 – Decided September 6, 2019

Before Judges Koblitz and DeAlmeida.

On appeal from the Superior Court of New Jersey, Law Division, Essex County, Indictment No. 16-07-0117.

Howard P. Lesnik, attorney for appellant.

Gurbir S. Grewal, Attorney General, attorney for respondent (Adam David Klein, Deputy Attorney General, of counsel and on the brief).

PER CURIAM

Defendant Shawn Pearson appeals from his June 26, 2018 judgment of conviction after pleading guilty to second-degree possession with intent to distribute cocaine, N.J.S.A. 2C:35-5(a)(1) and 2C:35-5(b)(2). He argues the trial court should have granted his motion to suppress drugs, drug paraphernalia, and a loaded weapon found on his person and in his vehicle after a traffic stop. See R. 3:5-7(d) (allowing an appeal of the denial of a suppression motion after a guilty plea). We affirm.

I.

The following facts were found by the trial court after a suppression hearing. On February 15, 2016, two New Jersey State Police detectives were traveling together in an unmarked vehicle when they saw a silver Jeep speeding erratically through a busy intersection. The Jeep drifted into a construction zone with workers present and struck an orange safety cone without brake light activation. The detectives observed the Jeep's driver-side door open for ten seconds. At that point, the detectives radioed for backup units.

The detectives then observed the Jeep nearly strike an unmarked police vehicle that had responded to the call for assistance, as the Jeep turned left without a turn signal. The Jeep thereafter made an abrupt right turn with no signal and ran through a stop sign at a speed above the posted limit. After

following the Jeep for approximately half a mile, the detectives activated their lights and sirens and effectuated a stop. The time between the detectives' first observation of the Jeep and the stop was approximately two minutes.

One detective approached the driver-side window of the Jeep where he observed defendant in the driver's seat rocking back and forth. The detective described defendant as "irate and belligerent" with his hands "swinging up and down" and his voice "exceedingly loud to the point [of] yelling." Defendant had bloodshot eyes and a visibly dry mouth. He spoke in a slurred manner and was neither acting rationally nor making sense. Defendant produced a driver's license but was unable to produce the vehicle's registration or proof of insurance. The detective directed defendant to exit the vehicle.

As defendant was stepping out of the Jeep, the detective saw a hypodermic needle and crack-cocaine in an open cup holder inside the vehicle's center console. As a result, the detective arrested defendant and searched his person. The search revealed thirty-three loose Oxycodone pills in defendant's jacket pocket, two medium-sized crack-cocaine rocks in a blue box with a clear top, fourteen baggies of crack-cocaine in defendant's left jeans pocket, and $500 in cash.

 A-5435-17T3

The detective searched the center console of the Jeep where he had previously seen the syringe and crack-cocaine. He opened a compartment of the center console, revealing a cigarette box containing two glass pipes with burnt crack-cocaine residue inside.

In addition, based on his training and experience, the detective noticed that the plastic dashboard of the Jeep showed evidence of tampering consistent with concealing contraband. The dashboard clips were not fully secured, as they would have been when the vehicle came from the manufacturer. In addition, the dashboard was, according to the detective, "protruding . . . it wasn't aligned right, it wasn't smooth." Aware from his training that Jeeps have "a natural void under the dashboard" that is often used to store contraband and weapons, the detective pushed the dashboard "slightly," and it "popped off easily, as if it had been removed on numerous occasions." Under the dashboard, the detective discovered a semi-automatic handgun loaded with hollow-nose bullets with its serial number defaced. Defendant thereafter confessed to having ingested controlled substances before driving the Jeep. The detective issued numerous motor vehicle citations.[1]

---

[1] The passenger in the Jeep was also arrested. She died prior to resolution of the criminal charges lodged against her.

A-5435-17T3

Defendant argued at the suppression hearing that the officers lacked probable cause to stop the Jeep and the warrantless searches of the cup holder, the closed console compartment, and the dashboard were unconstitutional.

The trial court determined the testimony of the detective who effectuated the stop and discovered the evidence to be credible. The court concluded that his observations provided reasonable and articulable suspicion the driver of the Jeep had committed motor vehicle violations and the stop of the vehicle without a warrant was thus lawful. The court also concluded the approximately two-minute period between the observation of the first motor vehicle infraction and the stop was reasonable because the detectives were waiting for the arrival of backup units.

The court found the detective's observation of the syringe and crack-cocaine in the open cup holder fell within the plain view exception to the warrant requirement and justified defendant's arrest. In addition, the court found that the contraband in the closed console compartment and under the dashboard was lawfully seized pursuant to the automobile exception to the warrant requirement.

After his guilty plea, the court sentenced defendant to an eight-year term of imprisonment with a fifty-four-month period of parole ineligibility. This appeal followed. Defendant makes the following arguments:

POINT I

THE TRIAL COURT ERRED IN RULING THE POLICE HAD PROBABLE CAUSE TO STOP THE DEFENDANT'S MOTOR VEHICLE.

POINT II

THE TRIAL COURT ERRED IN RULING THE WARRANTLESS SEARCH OF THE CENTER CONSOLE OF THE MOTOR VEHICLE WAS JUSTIFIED BY THE PLAIN VIEW DOCTRINE.

POINT III

THE TRIAL COURT ERRED IN RULING THE WARRANTLESS SEARCH OF THE VOID IN THE DASHBOARD OF THE MOTOR VEHICLE AS JUSTIFIED BY THE AUTOMOBILE EXCEPTION.

II.

We apply a deferential standard of review to a trial court's factual findings after a suppression hearing, upholding findings "supported by sufficient credible evidence in the record." State v. S.S., 229 N.J. 360, 381 (2017). We review de novo the trial court's application of its factual findings to the governing principles of law. State v. Jessup, 441 N.J. Super. 386, 389-90 (App. Div. 2015).

A police stop of a moving motor vehicle is a seizure of the vehicle's occupants and therefore falls within the purview of the Fourth Amendment and Article I, Paragraph 7 of the New Jersey Constitution. Whren v. United States,

6

517 U.S. 806, 809-10 (1996); State v. Baum, 199 N.J. 407, 423 (2009). "[A] police officer must have a reasonable and articulable suspicion that the driver of a vehicle, or its occupants, is committing a motor-vehicle violation or a criminal or disorderly persons offense to justify a stop." State v. Scriven, 226 N.J. 20, 33-34 (2016).

Our review of the record in light of the applicable precedents reveals sufficient credible evidence supporting the trial court's findings of fact regarding the detective's observations prior to stopping defendant's vehicle. The court, having heard the detective's testimony, determined he was credible and found he saw defendant commit a number of motor vehicle violations before stopping the Jeep. There is no basis to disturb the court's factual findings, nor support in the record for defendant's contention that the detective fabricated the motor vehicle violations to justify stopping defendant's vehicle. The stop of defendant's Jeep, therefore, was lawful.

We reject defendant's argument that the approximately two minutes between the first observation of a motor vehicle violation and the stop negated the basis for stopping the vehicle. The detective acted reasonably when he waited for backup to arrive before stopping the Jeep.

7

## III.

The State must satisfy three elements to justify the seizure of evidence under the plain view exception to the warrant requirement:

> First, the police officer must be lawfully in the viewing area.
>
> Second, the officer has to discover the evidence "inadvertently," meaning that he did not know in advance where evidence was located nor intend beforehand to seize it.
>
> Third, it has to be "immediately apparent" to the police that the items in plain view were evidence of a crime, contraband, or otherwise subject to seizure.
>
> [State v. Mann, 203 N.J. 328, 341 (2010) (quoting State v. Bruzzese, 94 N.J. 210, 236 (1983)).[2]]

The record amply supports the trial court's conclusion that the syringe and crack-cocaine discovered in the open cup holder in the Jeep's center console were obtained lawfully. As we explained above, the stop of the Jeep was lawful. The detective, therefore, was lawfully at the side of the Jeep when he observed the contraband. In addition, defendant's behavior suggesting he was under the influence of intoxicants, his motor vehicle violations, and his inability to

---

[2]  In State v. Gonzales, 227 N.J. 77, 82 (2016), the Court eliminated the inadvertence element of the plain view doctrine. The Court's holding, which was issued after the events giving rise to this appeal, is prospective. Ibid.

produce proof of insurance and registration warranted his removal from the vehicle. The contents of the open cup holder then became visible to the detective and were readily identifiable as contraband.[3]

IV.

> In State v. Witt, 223 N.J. 409, 415 (2015), the Supreme Court revised the standards under New Jersey law governing police searches of motor vehicles that have been lawfully stopped at the roadside. The Court held such nonconsensual roadside searches may be conducted without a warrant if: (1) the police have probable cause to believe the vehicle contains evidence of criminal activity; and (2) the situation arose from unforeseeable and spontaneous circumstances.
>
> [State v. Rodriguez, 459 N.J. Super. 13, 15 (App. Div. 2019).]

Our careful review of the record reveals sufficient support for the trial court's determination that the seizures of the contents of the closed compartment in the center console and the gun behind the dashboard fell within the automobile exception to the warrant requirement. The detective, having already observed a syringe and crack-cocaine in an open cup holder in the center console, had probable cause to believe the Jeep contained further contraband. As the trial

---

[3] Defendant does not argue that the detective's observation of the contraband was not inadvertent or that the syringe and crack-cocaine were not readily identifiable as contraband.

A-5435-17T3

court found, the detective's experience and training led him to suspect contraband was secreted in the Jeep. It was probable the closed container in the center console, immediately adjacent to the place where defendant kept a syringe and crack-cocaine in an open cup holder, would also contain contraband.

Having discovered contraband in the center console's closed compartment, the detective continued his search of the Jeep. The record supports the trial court's determination that the detective's training and experience informed his observation that the dashboard was likely tampered with to store contraband. The detective, aware there are natural voids under dashboards in Jeeps, having previously found contraband in such voids in other Jeeps, and observing that the dashboard in defendant's Jeep was protruding and not correctly aligned, pushed on it slightly, causing the dashboard cover to pop off, revealing a loaded weapon. We agree with the trial court's conclusion that the detective did not exceed the bounds of a reasonable search under the automobile exception to the warrant requirement. See State v. Patino, 83 N.J. 1, 10-11 (1980) ("It is widely recognized that a search, although validly initiated, may become unreasonable because of its intolerable intensity and scope.").

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-5435-17T3